**STATE of Tennessee, Appellant,**

v.

**Gary L. McCULLOCH, Appellee.**

Court of Criminal Appeals of Tennessee, at Knoxville.

March 8, 1995.

Kevin Shepherd, Maryville, for appellee.

Charles W. Burson, Attorney General and Reporter, Jennifer L. Smith, Asst. Attorney General, Nashville, Mike Flynn, District Attorney General, Philip H. Morton, Asst. District Attorney General, Maryville, for appellant.

## OPINION

PEAY, Judge.

The defendant was indicted for driving on a revoked license. On November 22, 1993, the defendant filed a motion to suppress the evidence obtained as a result of the stop of his automobile. Following an evidentiary hearing on February 15, 1994, the trial judge sustained the defendant's motion finding that

the stop of the defendant's automobile was improper.

The State brings this appeal as of right contending that the trial court erred in sustaining the defendant's motion to suppress. Following a review of the record, we reverse and remand for further proceedings.

The testimony presented at the evidentiary hearing revealed that on September 7, 1993, Deputy Scott Johnson of the Blount County Sheriff's Office saw an automobile being driven by the defendant. However, Deputy Johnson thought the driver was Ricky Latham, who he had previously arrested for DUI and driving on a revoked license. To confirm his suspicions, Deputy Johnson radioed the dispatcher and asked that a check be run on the license tag of the vehicle. The investigation revealed that the automobile was not registered to Latham and further that the tag was not registered to that automobile.

Knowing this to be a violation of Tennessee law, Deputy Johnson stopped the automobile and then realized that the driver was not Latham. Johnson asked the defendant for his license but the defendant was unable to produce a valid driver license. An NCIC check revealed that the defendant's license had been revoked.

Subsequent to his indictment for driving on a revoked license, the defendant filed a motion to suppress the evidence obtained during the stop of his automobile. The trial judge sustained the motion finding that the officer had not observed a misdemeanor committed in his presence and that the stop of the defendant's automobile failed to meet the standards of a valid *Terry* [1] stop. To that end the court held that any reasonable suspicion existing at the time of the stop related to a registration violation; therefore, the stop exceeded its bounds when the deputy inquired into driving privileges rather than vehicle registration.

In its sole issue the State claims that the trial judge erred in sustaining the defendant's motion to suppress the evidence. Specifically, the State challenges the trial judge's finding that a misdemeanor had not been committed in the officer's presence where the officer became aware of the license tag discrepancy through information he obtained from a police records check.

While the State's focus is upon whether a misdemeanor was committed in the officer's presence, we find it unnecessary to reach that point in addressing the validity of the stop of defendant's vehicle. First, we will analyze the basis for the stop, and second, we will consider the events that occurred following the stop.

■ Initially, we examine the primary basis for the officer's stop of the defendant's automobile. As stated above, the evidence revealed that Deputy Johnson thought the driver of the vehicle was Latham who he knew did not have a driver license. In *Roberson v. Metro. Gov't. of Nashville & Davidson Co.*, 56 Tenn.App. 729, 412 S.W.2d 902, 905 (Tenn.App.1966), the court stated that where a police officer knows that a person is driving without his license he may arrest him even though the driver is not engaged in some other visible violation. In *Roberson* the court reasoned that a police officer who arrests a man for drunk driving and testifies at trial against the man, who was convicted and whose license was revoked for one year, may arrest him when he observes him driving the following day. *Roberson*, 412 S.W.2d at 905. This arrest may be initiated even though no other visible violation has been observed. *Roberson*, 412 S.W.2d at 905. Under the facts of the present case, we find that the officer possessed sufficient knowledge at this point to stop the vehicle. However, the additional information known to Deputy Johnson supplemented his basis for the stop of the vehicle.

The defendant argues that the stop was still improper because the officer failed to give a time and date reference as to when he acquired his initial knowledge that Latham was driving on a revoked license. However, the record indicates that the officer had previously arrested Latham for DUI and driving on a revoked license. Further, the officer stated that he thought Latham's charges were still pending at the time of the stop at

---

1. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20    L.Ed.2d 889 (1968).

issue. This fact would indicate that when the officer saw the driver he thought was Latham, it was reasonable to believe that Latham was driving on a revoked license. We find that this information justifiably set the investigation in motion. Therefore, we feel the stop of the vehicle was proper.

Our analysis then turns to the events that occurred following the stop of the vehicle. The record indicates that once the defendant's vehicle was pulled over, Deputy Johnson realized that the driver was not who he had thought. An objective viewing of the facts known to Deputy Johnson at the time of the stop reveals that Johnson became aware through a police records check that the license plate displayed on the vehicle was not registered to that vehicle. Tennessee Code Annotated provides that "it is unlawful to ... remove a registration plate from a motor vehicle if ... removed for the purpose of ... attaching the decal or plate to another ... motor vehicle...." T.C.A. § 55–4–129(a). "A violation of this section is a Class A misdemeanor." T.C.A. § 55–4–129(b). Once the investigation revealed the wrong license plate on the car, regardless of the driver, the officer would have been derelict in his duty had he not inquired into the suspected commission of a misdemeanor. *See State v. Blankenship*, 757 S.W.2d 354 (Tenn.Crim. App.1988).

When Deputy Johnson approached the vehicle, he asked the defendant to present his driver license. The defendant contends that Johnson did not have the authority to ask for his driver license rather than his automobile registration. However, T.C.A. § 55–50–804 provides that "[t]he licensee shall have the licensee's license in immediate possession at all times when driving a motor vehicle and shall display it upon demand of any officer or agent of the department or any police officer of the state, county or municipality...." We realize that T.C.A. § 55–50–351 appears to be contrary to the above cited

section; however, we think the intent of T.C.A. § 55–50–351 is to limit vehicle stops made by officers other than state police officers where such a stop is made for the sole purpose of checking driver licenses. We find that the later provision of § 55–50–804 controls under the facts of the present case. *See State v. James Herbie Hinkle, Jr.*, No. 80–89–III, Davidson County (Tenn.Crim. App. filed December 9, 1980, in Nashville). Based upon these provisions, Deputy Johnson's actions were proper and the resulting knowledge that the defendant was driving on a revoked license is properly admissible.

The defendant contends that if the *motion to suppress is overturned on appeal*, officers would be permitted to randomly stop drivers to determine whether their registration was valid. However, this argument has no merit under the facts of this case because the stop was neither random nor arbitrary. Further, it is well established that baseless random vehicle stops for the mere purpose of checking license and registration information are impermissible under both state and federal law.[2]

In summary, we find that under the facts of the present case the stop of the defendant's automobile was reasonable and was based upon the good faith belief of the officer that the driver was driving without a license. Even though he soon realized upon stopping the vehicle that the driver was not who he had suspected, the officer was justified in making further inquiry.

The decision of the trial court is reversed and this matter is remanded for further proceedings.

SCOTT, P.J., and TIPTON, J., concur.

---

2. *See Hughes v. State*, 588 S.W.2d 296 (Tenn. 1979) (holding that the stop of defendant's vehicle was unlawful where officers stopped the vehicle to check the license and registration but had observed no suspicious activity), and *Delaware v. Prouse*, 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660 (1979) (holding that "except in

those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered ... stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment").