# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON

## STATE OF TENNESSEE v. ROBERT H. HARPER, JR.

**Direct Appeal from the Circuit Court for Hardin County**
**No. 7747     C. Creed McGinley, Judge**

---

**No. W1999-00492-CCA-R3-CD - Decided April 6, 2000**

---

The defendant, Robert H. Harper, Jr. appeals upon a certified question of law his conviction in the Hardin County Circuit Court for felonious possession of marijuana for which he received a three-year sentence as a Range I, standard offender and a fine of five thousand dollars. The defendant asserts that the stop of his vehicle was not based upon reasonable suspicion and that the subsequent warrantless search was unlawful. We conclude that the stop and search were improper, and we reverse the judgment of conviction and dismiss the case.

**T.R.A.P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed, Case Dismissed**

TIPTON, J., delivered the opinion of the court, in which WELLES, J., and LAFFERTY, SR.J., joined.

Terry L. Wood, Corinth, Mississippi, for the appellant, Robert H. Harper, Jr.

Paul G. Summers, Attorney General and Reporter; Mark E. Davidson, Assistant Attorney General; G. Robert Radford, District Attorney General; and John W. Overton, Jr., Assistant District Attorney General, for the appellee, State of Tennessee

## OPINION

The defendant, Robert H. Harper, Jr., appeals as of right from his conviction in the Hardin County Circuit Court pursuant to a guilty plea to possession of marijuana with intent to manufacture, deliver or sell, a Class D felony. He received a three-year sentence as a Range I, standard offender, with six months to be served in the county jail and the remainder to be served on probation. He was fined five-thousand dollars. The defendant reserved the following certified questions of law that are dispositive of the case, see Tenn. R. Crim. P. 37(b)(2)(i):

(1) whether or not on April 8th, 1998, the officer of the Hardin County Sheriff's Department had reasonable suspicion supported by specific and articulable facts to stop the vehicle of the Defendant; and

(2) whether or not the search of the Defendant's vehicle on or about April 8th, 1998,

as a result of the aforementioned stop and without a warrant was lawful.

We hold that the officer did not have reasonable suspicion to stop the defendant's vehicle, and we reverse the judgment of conviction and dismiss the case.

At the motion to suppress hearing, Sammy Davidson testified that he was the Sheriff of Hardin County at the time the defendant was arrested. Sheriff Davidson said that a burglary had occurred at the Tentucky One Stop on Highway 128 South a couple of nights before the defendant was stopped. He said that he had received a description of a vehicle that was possibly involved in the burglary and that the description was originally from Max Ray Alexander, who lived behind the Tentucky One Stop. He said that Mr. Alexander provided the description of the vehicle to Sammy Shutt, the store owner, who then provided the description to Investigator Fielder. Sheriff Davidson testified that he received the description either from Fielder or Fielder's report. He said he never spoke to Mr. Alexander or Mr. Shutt regarding the description of the vehicle. Sheriff Davidson said that he provided the description to his deputies, including Deputy John Murphy, and that the description was of a noisy, older model, dark colored pickup truck with a short wheelbase and round tail lights.

On April 8, 1998, the defendant was traveling east on U.S. Highway 64, proceeding out of Crump and into Savannah, Tennessee, when Deputy John Murphy stopped him. The defendant was driving a dark colored, 1968 Chevrolet pickup truck with an Oklahoma license plate. The pickup truck had a toolbox in the bed. Sheriff Davidson testified that he went to the scene after hearing Deputy Murphy report that he had stopped an older model pickup truck. When he arrived, Sheriff Davidson asked the defendant where he was going. He testified that the defendant first told him that he was going to Mountainview but then said he was going to Monteagle. Sheriff Davidson said that the defendant denied having any drugs, guns or money in the truck. He said that when he asked the defendant if he could look in the truck, the defendant initially replied that he was in a hurry. Sheriff Davidson said that when he told the defendant it would not take long, the defendant said, "Go ahead."

Sheriff Davidson testified that he searched the inside of the truck and the bed. In the bed of the truck, he found a toolbox, and when he raised the toolbox lid, he found a metal container located underneath. Sheriff Davidson said that the defendant told him that the toolbox was rusted out and that he kept the container underneath to keep the tools from falling out of the truck bed. Sheriff Davidson found two cardboard boxes inside the metal container, and when he removed the boxes, he found a large amount of marijuana. Sheriff Davidson testified that he later learned that a station wagon, not a pickup truck, had been involved in the burglary, but he said that the defendant's truck was very consistent with the description of the vehicle he had been provided.

Deputy John Murphy testified that he received a description of a vehicle from Sheriff Davidson that was supposed to have been involved in a burglary the night before. He said that the defendant's vehicle fit the description he was given of a black, older model vehicle with a toolbox in the back. He said that when he stopped the defendant, he "had no idea" whether the defendant

-2-

was involved in the burglary but that the defendant's dark, older model truck with a toolbox in the back was enough for him to check. He said that he saw the defendant's Oklahoma license plate before he stopped him.

The defendant denied telling Sheriff Davidson that he was going to Monteagle or Mountainview. He said he told the sheriff that he was going to Lake Chicamauga. He said he did not give Sheriff Davidson permission to search his truck.

The trial court denied the motion to suppress. The court found that Officer Murphy had reasonable suspicion to stop the defendant because "the description of the vehicle [involved in the burglary] was the same or similar to the description of the vehicle that he actually stopped." The court further found that the defendant voluntarily consented to the search of his vehicle and that, regardless, Sheriff Davidson "probably" had probable cause to search "based upon the observations of indicia of things that might lend themselves to drug trafficking."

Initially, we note that a trial court's factual findings on a motion to suppress are conclusive on appeal unless the evidence preponderates against them. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996); State v. Jones, 802 S.W.2d 221, 223 (Tenn. Crim. App. 1990). The application of the law to the facts as determined by the trial court is a question of law which is reviewed de novo on appeal. State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

The defendant first contends that the trial court erred by finding that Officer Murphy had reasonable suspicion to stop him. Relying upon State v. Simpson, 968 S.W.2d 776, 781-82 (Tenn. 1998), he contends that the information obtained by the officers must be "sufficiently reliable" and must then justify reasonable suspicion. He argues that the description of the vehicle was unreliable in that it involved multiple layers of hearsay and that it was too scant to have provided Officer Murphy with reasonable suspicion. The state contends that the defendant failed to object to the unreliability of the description and that the description nevertheless provided Officer Murphy with specific, articulable facts to justify reasonable suspicion.

First, we reject the state's contention that the defendant waived the issue of the reliability of the description by failing to object at the suppression hearing. The purpose of the suppression hearing was to determine whether reliable information existed to create specific, articulable facts to justify a reasonable suspicion. In essence, the suppression hearing itself was an objection to the reliability of the evidence. We do not view the issue to be waived.

It is well-settled that an automobile stop constitutes a seizure within the meaning of both the Fourth Amendment of the United States Constitution and Article I, Section 7 of the Tennessee Constitution. See Michigan Dep't of State Police v. Sitz, 496 U.S. 444, 450, 110 S. Ct. 2481, 2485 (1990); State v. Pulley, 863 S.W.2d 29, 30 (Tenn. 1993). The police may stop a vehicle if they have reasonable suspicion based upon specific and articulable facts that a criminal offense has been or is about to be committed. Terry v. Ohio, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968); Hughes v. State, 588 S.W.2d 296, 305 (Tenn. 1979). This determination is based upon the totality of the

circumstances, which includes, but is not limited to, objective observations, information obtained from other police officers or agencies, information obtained from citizens, and the rational inferences and deductions that a trained police officer may draw from the facts and circumstances. United States v. Cortez, 449 U.S. 411, 418, 10l S. Ct. 690, 695 (1981); State v. Watkins, 827 S.W.2d 293, 294 (Tenn. 1992).

We begin our analysis of this case by noting that the description of the vehicle was initially related by Mr. Alexander, the neighbor, who provided the information to Mr. Shutt, who in turn provided the information to Investigator Fielder. Sheriff Davidson received the information from Investigator Fielder, and Deputy Murphy received the information from Sheriff Davidson. We believe that Deputy Murphy's reliance upon information provided by Sheriff Davidson, and Sheriff Davidson's reliance upon information provided by Investigator Fielder was justified. Officers are entitled to rely upon information provided to them by other officers. See Whiteley v. Warden, 401 U.S. 560, 568, 91 S. Ct. 1031, 1037 (1971); State v. Moore, 775 S.W.2d 372, 378 (Tenn. Crim. App. 1989). The problem, however, lies with the reliability of Mr. Alexander's description to Mr. Shutt, and Mr. Shutt's description to Investigator Fielder.

In Simpson, our supreme court considered whether information from a confidential informant, known to the officer, provided reasonable suspicion to effect an investigatory stop. While recognizing that the reasonable suspicion required for an investigatory stop is a less demanding standard than that required for probable cause, the court concluded that the factors set forth in State v. Jacumin, 778 S.W.2d 430, 436 (Tenn. 1989), "are helpful in determining whether a tip is sufficiently reliable to support a finding of reasonable suspicion." Simpson, 968 S.W.2d at 781. In Jacumin, our supreme court adopted the two-prong test of Aguilar v. Texas, 378 U.S. 198, 84 S. Ct. 1509 (1964), and Spinelli v. United States, 393 U.S. 410, 89 S. Ct. 584 (1969), which requires a showing of the informant's veracity or credibility and his or her basis of knowledge.

Keeping the foregoing principles in mind, we question the reliability of the description. We note that the record is particularly scant with respect to exactly what Mr. Alexander saw and what he related to Mr. Shutt. Mr. Alexander, Mr. Shutt, and Investigator Fielder did not testify at the suppression hearing. Sheriff Davidson testified only that Mr. Alexander lived behind the Tentucky One Stop, heard the burglar alarm sound, and relayed information to Mr. Shutt about a truck that was "possibly" involved in the burglary. Presumably, the information he relayed was a description of a vehicle, but the record does not indicate, for example, whether Mr. Alexander saw the vehicle driving away from the store or driving in the vicinity of the store. Furthermore, we note that Mr. Alexander did not provide the information to the police but to Mr. Shutt, and the record does not indicate when Mr. Alexander provided the description to Mr. Shutt. See Simpson, 968 S.W.2d at 782 (noting that if an informant reports an incident to police at or near the time it occurs, the court can often assume the report is firsthand and reliable); Pulley, 863 S.W.2d at 32 (noting "the importance of the timing of the tip in assessing the reliability of the informant, for timing implies an eyewitness basis of knowledge"). In addition, the record shows that Mr. Alexander and Mr. Shutt were not interviewed regarding their descriptions of the vehicle to ensure that the descriptions were the same or to clarify what Mr. Alexander saw. Under these circumstances, we hesitate to say that

the description was sufficiently reliable.

In any event, we believe that even if the information were sufficiently reliable, it did not provide Deputy Murphy with specific, articulable facts to support a finding of reasonable suspicion. First, it is unclear when the burglary occurred in relation to when the defendant's vehicle was stopped. Sheriff Davidson testified that the burglary occurred a couple of days before, and Officer Murphy testified that the burglary occurred the night before the defendant was stopped. The time that the burglary occurred in relation to when the defendant was stopped is important in determining whether Officer Murphy had reasonable suspicion to justify an investigatory stop. See Griffin v. State, 604 S.W.2d 40, 42 (Tenn. 1980) (noting that in a robbery case, one factor to be considered in determining whether an officer has reasonable suspicion to justify an investigatory stop is whether the stop "was reasonably close to the robbery, both in time and space"). In any event, the record is clear that the stop was not immediately following or even within several hours of the burglary.

The only information upon which Deputy Murphy relied was that a dark, older vehicle with a toolbox in the back was supposed to have been involved in a burglary at the Tentucky One Stop. We believe that under the particular facts of this case, this information is simply not enough to warrant a reasonable suspicion that would justify an investigatory stop of the defendant. The United States Supreme Court has held that "reasonable suspicion, like probable cause, is dependent upon both the content of the information possessed by police and its reliability." Alabama v. White, 496 U.S. 325, 330, 110 S. Ct. 2412, 2416 (1990). Considering that the description of the vehicle was generic and based upon information of unproven reliability; the time lapse between the burglary and the stop; and the fact that the defendant, with an Oklahoma license plate, was stopped on U.S. Highway 64 as he entered the town where the burglary occurred, these circumstances combined show that under the facts of this case, Deputy Murphy lacked the specific, articulable facts necessary to create a reasonable suspicion that would warrant an investigatory stop. Thus, the stop was unlawful and the evidence obtained as a result of the stop should have been suppressed.

Although unnecessary to our resolution of the case, we will briefly address the defendant's remaining argument that he did not consent to the search of his truck. "To pass constitutional muster, consent to search must be unequivocal, specific, intelligently given, and uncontaminated by duress or coercion." State v. Brown, 836 S.W.2d 530, 547 (Tenn. 1992). The trial court accredited the testimony of Sheriff Davidson that the defendant told the officer to "[g]o ahead" and search the truck, and the defendant has failed to show that the record preponderates against this finding. The defendant further asserts that assuming he did consent, the stressful nature of the circumstances, i.e., that the defendant was from out of state and was stopped and questioned about drugs, shows that his consent was not voluntary. We disagree. No evidence exists in the record of a coercive atmosphere that would negate the voluntariness of the defendant's consent.

In consideration of the foregoing and the record as a whole, the conviction is reversed and

the case is dismissed.

PER CURIAM
(Tipton and Welles, JJ., Lafferty, Sr.J.)