# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### September 22, 2004 Session

## STATE OF TENNESSEE v. CHARLES JACKSON, JR

**Direct Appeal from the Circuit Court for Robertson County**
**No. 03-0130     John H. Gasaway, III, Judge**

---

**No. M2003-02417-CCA-R3-CD - Filed December 14, 2004**

---

Defendant, Charles Jackson, Jr., entered a plea of guilty to possession of cocaine of over 0.5 grams with intent to sell, a Class C felony. The trial court imposed the recommended sentence of eight years as a Range II multiple offender. As a part of the plea agreement, Defendant reserved two certified questions of law under Rule 37(b)(2)(i) of the Tennessee Rules of Criminal Procedure arguing that the trial court erred in not suppressing items found during a search of his vehicle. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which DAVID G. HAYES and JERRY L. SMITH, JJ., joined.

Larry B. Felts, Nashville, Tennessee, for the appellant, Charles Jackson, Jr.

Paul G. Summers, Attorney General and Reporter; Richard H. Dunavant, Assistant Attorney General; John Wesley Carney, Jr., District Attorney General; and Dent Morriss, Assistant District Attorney General, for the appellee, the State of Tennessee.

## OPINION

### I. Suppression Hearing

At the hearing on Defendant's motion to suppress, Officer Terry Plaisance testified that he was patrolling the portion of Interstate 65 that runs through White House, Tennessee, when he noticed a car traveling below the speed limit. Officer Plaisance called in the license plate number of the vehicle and learned that the driver's license of the registered owner, Antonio Smith, was suspended. The dispatcher also relayed a physical description of Mr. Smith based on his driver's license. The information indicted that Mr. Smith, who was born in 1978, was an African-American male, with black hair and brown eyes, five feet nine inches tall, and weighing two hundred and two pounds.

Officer Plaisance pulled his car into the left lane so that it was next to Defendant's vehicle. Officer Plaisance observed that the driver of the vehicle appeared to match Mr. Smith's description, and he initiated a stop of Defendant's vehicle. Officer Plaisance asked Defendant if he was Antonio Smith, and Defendant replied that his name was Charles Jackson. Officer Plaisance asked for Defendant's driver's license to verify his identity. Defendant handed him a "Tennessee identification card." Officer Plaisance said that it was his experience that a driver generally carries an identification card when his or her driver's license had been suspended or revoked. He asked Defendant, "why are you suspended?" Defendant said that his driver's license had been suspended "for a ticket that he hadn't [sic] taken care of in Florida."

Officer Plaisance returned to his vehicle to verify the status of Defendant's driver's license and to request a back-up patrol car. After the other officer arrived, Defendant consented to a search of his person and vehicle which led to the discovery of the drugs upon which Defendant's conviction was based.

On cross-examination, Officer Plaisance conceded that he could not tell what color Defendant's eyes were at that time of the night, and that Defendant was thirty-eight years old. Officer Plaisance said that he estimated Defendant's weight and height before he got out of the car "from experience for the most part."

Defendant testified that he observed Officer Plaisance pulling up to his vehicle but denied that the police car drew even with Defendant's vehicle so that Defendant's face was visible. Defendant said that he was six feet, two inches tall, and weighed two hundred and fifty pounds. Antonio Smith testified that he had brown, not black, hair.

## II. Trial Court's Findings

Based upon the totality of the circumstances, the trial court found that the investigatory stop of Defendant's vehicle was supported by a reasonable suspicion that the vehicle was driven by Antonio Smith whose driver's license had been suspended. The trial court continued:

> After stopping the vehicle, the asking of the driver if he were Antonio Smith, the asking of the driver for identification when the officer was told by the driver he was Charles Jackson, the checking by the officer of the validity of . . . the driver's operator's license after having been told by the driver that his operator's license was in a suspended status are all actions which are legally justified.
>
> The officer had a right to do each of those things to act upon the suspicion that he developed after he learned the information that he did from the dispatch. So, the motion to suppress is accordingly denied.

## III. Standard of Review

The findings of fact made by the trial court at the hearing on a motion to suppress are binding upon this Court unless the evidence contained in the record preponderates against them. *State v.*

*Ross*, 49 S.W.3d 833, 839 (Tenn. 2001). The prevailing party is entitled to the strongest legitimate view of the evidence and all reasonable inferences drawn from that evidence. *State v. Hicks*, 55 S.W.3d 515, 521 (Tenn. 2001). However, this Court is not bound by the trial court's conclusions of law. *State v. Randolph*, 74 S.W.3d 330, 333 (Tenn. 2002). The application of the law to the facts found by the trial court are questions of law this Court reviews *de novo*. *State v. Daniel*, 12 S.W.3d 420, 423 (Tenn. 2000).

## IV. Certified Question of Law

Defendant presents the following two certified questions on appeal:

1) Whether the arresting officer had probable cause or reasonable suspicion to stop the vehicle that the defendant was driving, based solely on a radio transmission that the owner of the vehicle's license plate had a suspended license; and

2) Whether the officer had probable cause to ask the defendant about the status of his driver's license, after the officer confirmed that the defendant was not the owner of the license plate.

Because this appeal comes before us as a certified question of law pursuant to Rule 37(b) of the Tennessee Rules of Criminal Procedure, we must first determine whether the procedural requirements have been met. Rule 37(b) provides, in part, that:

> An appeal lies from any order or judgment in a criminal proceeding where the law provides for such appeal, and from any judgment of conviction . . . upon a plea of guilty [if] . . .[the] defendant entered into a plea agreement under Rule 11(e) but explicitly reserved with the consent of the State and of the court the right to appeal a certified question of law that is dispositive of the case and the following requirements are met:
>
> (A) The judgment of conviction, or other document to which such judgment refers that is filed before the notice of appeal, must contain a statement of the certified question of law reserved by the defendant for appellate review;
> (B) The question of law must be stated in the judgment or document so as to identify clearly the scope and limits of the legal issue reserved;
> (C) The judgment or document must reflect that the certified question was expressly reserved with the consent of the State and the trial judge; and
> (D) The judgment or document must reflect that the defendant, the State, and the trial judge are of the opinion that the certified question is dispositive of the case . . . .

Tenn. R. Crim. P. 37(b)(2); *State v. Preston*, 759 S.W.2d 647, 650 (Tenn. 1988). The record shows that all of the procedural requirements of Rule 37 have been met; we must also review whether the certified questions presented for review are dispositive of the case.

A dispositive issue is one where the appellate court "must either affirm the judgment or reverse and dismiss." *State v. Wilkes*, 684 S.W.2d 663, 667 (Tenn. Crim. App. 1984). Correspondingly, an issue is not dispositive of the case "when [the appellate court] might reverse and remand for trial." *Id.*. *But see State v. Payne*, ___ S.W.3d ___, 2004 WL 2453561 (Tenn. 2004) (Under the particular facts presented in the defendant's certified question requesting suppression of his statement to the police, the supreme court affirmed the reversal of the defendant's convictions, but reversed the dismissal of the charges and remanded for proceedings consistent with the opinion.) Although the parties and trial court certified Defendant's issues as dispositive of the case, an appellate court is not bound by the trial court's determination that an issue is dispositive. *Preston*, 759 S.W.2d at 651. Rather, this Court must make an independent determination of the dispositive nature of the issue and must deny appellate review if the court determines the issue is not dispositive. *Id.*

Defendant's first certified question challenges the legality of the initial investigatory stop. The State concedes the dispositive nature of Defendant's first question and agrees that its entire case is based on the evidence seized during the search conducted during the investigatory stop. Evidence seized during an illegal traffic stop is subject to suppression. *See State v. Norwood*, 938 S.W.2d 23, 26 (Tenn. Crim. App. 1996).

The State challenges for the first time on appeal, however, the dispositive nature of Defendant's second certified question. Assuming Officer Plaisance initially had reasonable suspicion to initiate an investigatory traffic stop, the second question focuses on whether Officer Plaisance's continued questioning of Defendant exceeded the permissible scope of a *Terry* stop. *See Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). "A reasonable traffic stop can become unreasonable and constitutionally invalid 'if the time, manner or scope of the investigation exceeds the proper parameters.'" *State v. Troxell*, 78 S.W.3d 866, 871 (Tenn. 2002) (quoting *United States v. Childs*, 256 F.3d 559, 564 (7th Cir. 2001)).

Regardless of Officer Plaisance's conduct during the stop, the State contends that Defendant consented to the search which led to the discovery of the incriminating evidence. *See State v. Garcia*, 123 S.W.3d 335 (Tenn. 2003); *State v. Simpson*, 968 S.W.2d 776 (Tenn. 1998). The court in *Garcia* observed that "'a consent to search that is preceded by an illegal seizure is not 'fruit of the poisonous tree' if the consent is both: 1) voluntary, and 2) not an exploitation of the prior illegality." *Garcia*, 123 S.W.3d at 346 (quoting Wayne LaFave, 3 *Search and Seizure* § 8.2(d) at 656 (3rd ed. 1996)). The *Garcia* court also observed "that attenuation issues are highly factual." *Id.*, citing *State v. Huddleston*, 924 S.W.2d 666, 674 (Tenn. 1996). The question of the validity of Defendant's consent to search was not litigated in the trial court, and the trial court did not make any findings of fact as to the nature of Defendant's consent. Accordingly, we conclude that both of Defendant's certified questions, as presented on appeal, are dispositive of the case.

## V. Investigatory Stop

"It is well-settled that an automobile stop constitutes a seizure within the meaning of both the Fourth Amendment of the United States Constitution and Article I, section 7 of the Tennessee Constitution." *State v. Harper*, 31 S.W.3d 267, 271 (Tenn. Crim. App. 2000)(citations omitted). A person is clearly seized when an officer turns on a police car's blue lights and initiates a stop. *State v. Binette*, 33 S.W.3d 215, 218 (Tenn. 2000). Because an investigatory stop is not conducted pursuant to a warrant, it is presumed unreasonable unless the seizure was conducted under one of the limited exceptions to the warrant requirement. *State v. Yeargin*, 958 S.W.2d 626, 630 (Tenn. 1997). One exception permits a law officer to conduct a brief investigatory stop if the officer has a reasonable suspicion based upon specific and articulable facts that a criminal offense has been or is about to be committed. *Terry,* 392 U.S. at 21, 88 S. Ct. at 1880. In determining whether an officer has a reasonable suspicion based upon specific and articulable facts, a court should consider the totality of the circumstances, including, but not limited to, "the officer's personal objective observations, information obtained from other police officers or agencies, information obtained from citizens, and the pattern of operation of certain offenders." *Yeargin*, 958 S.W.2d at 632. In addition, "[a] court must also consider the rational inferences and deductions that a trained officer may draw from the facts and circumstances known to him." *Id.*

An investigatory stop "based upon a reasonable suspicion that a driver is unlicensed [is] constitutionally permissible." *Id.* at 631, citing *Delaware v. Prouse*, 440 U.S. 648, 663, 99 S. Ct. 1391, 1401, 59 L. Ed. 2d 660 (1979); *see also State v. Watkins*, 827 S.W.2d 293 (Tenn. 1993)(An investigatory stop of a motor vehicle based on the vehicle's description is permissible when the police officer knows that the owner of the vehicle has an outstanding capias.); *State v. McCulloch,* 906 S.W.2d 3 (Tenn. Crim. App. 1995).

In *McCulloch*, the police officer spotted the defendant driving his automobile. The officer thought the defendant was an individual whom the officer had recently arrested for DUI and driving on a revoked license. The officer radioed for information about the vehicle's license tag. He discovered that the vehicle was not registered in the name of the individual he believed was the driver, and that the tag was not registered to that vehicle. A panel of this court concluded that the police officer had a reasonable suspicion based on specific and articulable facts to stop the vehicle. *Id.* at 4.

In the case *sub judice*, Officer Plaisance had information that the driver's license of the owner of the vehicle in question was suspended. The dispatcher provided a basic description of the owner, Antonio Smith. Officer Plaisance observed Defendant as he drove the vehicle and determined that he generally fit the description provided by the dispatcher. Considering the totality of the circumstances, we find that Officer Plaisance had the requisite reasonable suspicion based on specific and articulable facts to initiate an investigatory stop of Defendant's vehicle.

Next, we address Defendant's argument that even if the initial stop was lawful, the duration and scope of the seizure exceeded permissible limits. Defendant argues that Officer Plaisance

exceeded the scope of the stop when he asked Defendant for his driver's license after Defendant told him he was not Antonio Smith.

The constitutional parameters of an encounter between a police officer and a motorist was set forth in *State v. Troxell*, 78 S.W.3d 866 (Tenn. 2002).

> Because a traffic stop is an investigatory stop, the officer's actions must be "reasonably related in scope to the circumstances which justified the interference in the first place," *Terry v. Ohio*, 392 U.S. 1, 20, 88 S. Ct. 1868, 1879, 20 L. Ed. 2d 889 (1968), and the detention "must be temporary and last no longer than necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500, 103 S. Ct. 1319, 1325, 75 L. Ed. 2d 229 (1983); *State v. England*, 19 S.W.3d at 767-68. Moreover, the officer should employ the least intrusive means reasonably available to investigate his or her suspicions in a short period of time. *Florida v. Royer*, 460 U.S. at 500, 103 S. Ct. at 1326. As this Court has said, "the proper inquiry is whether during the detention, the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly." *State v. Simpson*, 968 S.W.2d at 783 (citation omitted). Otherwise, a reasonable traffic stop can become unreasonable and constitutionally invalid "if the time, manner, or scope of the investigation exceeds the proper parameters."

*Id*. at 871.

One of the lines of inquiry a police officer may pursue during an investigatory stop involves verifying the driver's identity and compliance with licensing requirements. *See Prouse*, 440 U.S. at 663, 99 S. Ct. at 1401. "It is well established that an officer may ask a [person] to identify himself in the course of a *Terry* stop" based on reasonable suspicion. *Hiibel v. Sixth Judicial District of Nevada*, ___ U.S. ___, 124 S. Ct. 2451, 2459, 159 L. Ed. 2d 292 (2004)(citing *United State v. Hensley*, 469 U.S. 221, 229, 105 S. Ct. 675, 83 L. Ed. 2d 604 (1985)).

Returning to the situation examined in *McCulloch*, after stopping the defendant's vehicle, the police officer discovered that the defendant was not the individual he believed was driving the vehicle. Nonetheless, the officer asked the defendant for his driver's license and learned that his license was revoked. The defendant argued that the officer had no authority to ask for his driver's license once he determined that the defendant was not who he thought. This Court concluded that the officer's actions proper. *McCulloch*, 906 S.W.2d at 5. The court observed that Tennessee Code Annotated section requires that "[t]he licensee shall have the licensee's license in immediate possession at all times when driving a motor vehicle and shall display it upon demand of any . . . police officer of the state, county or municipality." *Id. See also State v. Levitt*, 75 S.W.3d 159, 176-77 (Tenn. Crim. App. 2001)(Observing that a motorist's refusal to show his driver's license when requested to do so by a police officer during a permissible motor vehicle stop is sufficient to support a violation of Tennessee Code Annotated section 55-50-351).

Based upon the totality of the circumstances, Officer Plaisance's request for Defendant's driver's license to verify his identity was reasonable. When Defendant failed to produce a driver's license, and this indicated to the officer that Defendant's license was suspended, Officer Plaisance had a justifiable reason to continue his inquiry.

In summary, we find under the facts presented in this case that the stop of Defendant's vehicle and Officer Plaisance's inquiries to verify Defendant's identity were constitutionally permissible. Accordingly, the trial court did not err in denying Defendant's motion to suppress.

## CONCLUSION

After a thorough review, we affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, JUDGE