

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-13-00566-CR

---

COLEMAN NICHOLS                                                    APPELLANT

V.

THE STATE OF TEXAS                                                       STATE

----------

FROM THE 367TH DISTRICT COURT OF DENTON COUNTY
TRIAL COURT NO. F–2011–1562–E

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

A jury found Appellant Coleman Nichols guilty of aggravated assault and assessed his punishment at twenty-seven years' confinement. *See* Tex. Penal Code Ann. § 22.02 (West 2011). The trial court sentenced him accordingly. In five issues, Nichols complains of the trial court's denial of his motion for continuance and motion for new trial, of the exclusion of certain exculpatory

---

[1]*See* Tex. R. App. P. 47.4.

evidence, of the jury's verdict, and of the trial court's denial of his requested jury instruction on self defense. We will affirm.

## II. BACKGROUND

After dating for a year and a half, Nichols and Diana Adame ended their relationship. They had a son, A.N., who lived with Adame during the events giving rise to this case. By all accounts, neither parent viewed the other as a particularly good influence on the child. Adame abused drugs and took A.N. along when she bought drugs. Nichols spent time in prison for domestic abuse. Both parents complained to CPS about the other, alleging that the other had physically abused their son. In March 2011, Adame reported to CPS that Nichols hit her, and Nichols was arrested. CPS gave Adame custody of A.N.

On April 15, 2011, Nichols was at a bar when he heard that Adame had been at a "dope house." Angered and concerned for his son, Nichols borrowed a shotgun and drove to where Adame was staying in order to threaten her. Adame was outside the house with Eric Grant when Nichols drove up, and she recognized Nichols's truck. Nichols shot Adame with the shotgun.

Adame suffered "life-threatening" injuries from the shotgun blast, which left her with pellets in her upper abdomen, chest, face, and arms, but an emergency surgery saved her life.

## III. DENIAL OF MOTION FOR CONTINUANCE

In his first issue, Nichols argues that the trial court improperly denied his motion for continuance. He contends that the purpose of his requested

2

continuance was to identify, contact, and interview certain individuals named in CPS reports that the State turned over to him five days prior to trial.[2] He asserts that the CPS reports contained exculpatory material that required additional investigation and interviews of the CPS employees named in the reports and contends that those individuals would have provided impeachment and punishment-mitigation testimony necessary for him to present a complete defense.

We review the trial court's ruling on a motion for continuance for an abuse of discretion. *Gallo v. State*, 239 S.W.3d 757, 764 (Tex. Crim. App. 2007), *cert. denied*, 553 U.S. 1080 (2008); *Vasquez v. State*, 67 S.W.3d 229, 240 (Tex. Crim. App. 2002). To establish an abuse of discretion, the appellant must show that the trial court erred by denying the motion and that the error resulted in actual harm. *Gonzales v. State*, 304 S.W.3d 838, 843 (Tex. Crim. App. 2010).

The first prong of *Gonzales* requires the appellant to demonstrate that "the case made for delay was so convincing that no reasonable trial judge could conclude that scheduling and other considerations as well as fairness to the State outweighed the defendant's interest in delay of the trial." *Id.* The second prong requires that the error result in actual prejudice. *Janecka v. State*, 937 S.W.2d 456, 468 (Tex. Crim. App. 1996), *cert. denied*, 522 U.S. 825 (1997); *Heiselbetz v. State*, 906 S.W.2d 500, 511–12 (Tex. Crim. App. 1995). The

---

[2]The records turned over by the State contained 236 pages of CPS investigation reports from 2002 through June 2013.

appellant must prove the prejudice with considerable specificity; mere speculation and bare assertions are insufficient to justify reversing the trial court's decision. *Gonzales*, 304 S.W.3d at 842–43.

Nichols makes several arguments on appeal, as he did in the trial court, regarding why he needed more time to investigate the information contained in the CPS reports. The majority of his arguments center on information from the CPS reports that could lead to evidence attacking Adame's credibility and impeaching her testimony.[3] Generally, a trial court does not abuse its discretion when it denies a continuance sought to secure impeachment testimony. *See Keel v. State*, 434 S.W.2d 687, 689 (Tex. Crim. App. 1968); *Franks v. State*, 90 S.W.3d 771, 808 (Tex. App.—Fort Worth 2002, no pet.). And here, Nichols did present evidence casting doubt on Adame's credibility. For example, Adame testified to her drug use and evidence showed that she had used drugs around A.N.; Adame admitted to lying to police about a separate family-violence incident with Nichols; and Adame's step-father testified that Adame had made false accusations against Nichols in the past. Thus, even if the trial court somehow erred by denying the motion for continuance regarding the information that

---

[3]For example, one CPS report included a CPS investigator's notation that she did not think Adame was telling the truth about where she was staying during the investigation, and Nichols argues that he should have been allowed time to interview this CPS investigator for possible impeachment testimony. In another CPS report, a CPS employee stated that Adame had asked her what would happen if Nichols was caught using drugs, which Nichols argues could have been used to impeach Adame's testimony denying that she had ever asked that question.

4

Nichols argues could have led to impeachment evidence, we cannot say that Nichols suffered any actual prejudice. *See Janecka*, 937 S.W.2d at 468; *Heiselbetz*, 906 S.W.2d at 511–12.

Nichols also argues that the CPS reports revealed the names of CPS employees who could have provided punishment-mitigation evidence that Nichols was doing well on parole and that he had cared for his son and was able to meet his son's needs. But Nichols knew of his dealings with CPS, of his conduct during parole, and of his parole officers prior to receiving the CPS reports from the State. *Cf. Wright v. State*, 28 S.W.3d 526, 532 (Tex. Crim. App. 2000) (holding that trial court did not abuse its discretion by denying defendant's request to appoint DNA expert, filed on the morning of trial, where defendant "knew early on that this case involved blood/DNA analysis"), *cert. denied*, 531 U.S. 1128 (2001).

Nichols also argues that the CPS reports show that "neighbors" had seen a known drug dealer go to Adame's house while Nichols was at work. Nichols argues that he should have been granted a continuance to determine who these "neighbors" were and what other information they could provide Nichols for his defense. These "bare assertions" are insufficient to justify reversing the trial court's decision.[4] *See Gonzales*, 304 S.W.3d at 842–43; *Heiselbetz*, 906 S.W.2d

---

[4]Nichols filed a motion for new trial, complaining in part of the trial court's denial of his motion for a continuance, but he did not present any evidence at the new-trial hearing as to what the neighbors may have testified to. *See Gonzales*, 304 S.W.3d at 842 (explaining that defendant must ordinarily file motion for new

5

at 512 (rejecting assertion that counsel did not have time to adequately investigate medical records for potentially mitigating evidence without a showing of harm).

We hold that the trial court did not abuse its discretion by concluding that scheduling and other considerations, as well as fairness to the State, outweighed Nichols's interest in delaying the trial to investigate certain information presented in the CPS reports. *See Gonzales*, 304 S.W.3d at 843. We further hold that, even if the trial court did err by denying the motion for continuance, Nichols was not harmed by the denial. *See id.* at 842–43. Accordingly, we overrule Nichols's first issue.

## IV. EXCLUSION OF EVIDENCE OF ADAME'S HISTORY AS A CONFIDENTIAL INFORMANT

In his second issue, Nichols argues that the trial court erred by preventing him from obtaining any discovery regarding Adame's history as a confidential informant and by refusing to allow cross-examination on the subject.

Prior to trial, Nichols filed a motion for discovery, requesting in part any police records relating to Adame's role as a confidential informant to the Denton police department. At a hearing on the motion, the State objected that evidence of Adame's past role as a confidential informant was not relevant because she was the victim in this aggravated assault case and because she had not been a

trial based on denial of continuance in order to produce evidence as to what additional information, evidence, or witnesses the defense would have had available had the motion been granted).

6

confidential informant for three years prior to the shooting. The trial court denied Nichols's request. At trial, when Nichols attempted to cross-examine Adame and a police officer about Adame's status as a confidential informant, the trial court sustained the State's relevancy objections.

Nichols contends on appeal, as he did in the trial court, that the trial court's rulings on the discovery and exclusion of Adame's history as a confidential informant violated *Brady* and denied him a meaningful opportunity to create and present a complete defense through cross-examination during both the guilt/innocence and punishment stages of the trial.[5]  *See* U.S. Const. amend. VI; XIV; *Brady v. Maryland*, 373 U.S. 83, 86–87, 83 S. Ct. 1194, 1196–97 (1963).

## A. *Brady*

The State has a constitutional duty to disclose to a defendant material, exculpatory evidence. *Brady*, 373 U.S. at 86–87, 83 S. Ct. at 1196–97; *Pena v. State*, 353 S.W.3d 797, 810 (Tex. Crim. App. 2011). When arguing a *Brady* violation, an appellant must demonstrate that (1) the State failed to disclose evidence, (2) the withheld evidence is favorable to the appellant, and (3) the evidence is material, that is, there exists a reasonable probability that had the evidence been disclosed, the outcome of the trial would have been different. *Pena*, 353 S.W.3d at 812; *Hampton v. State*, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002).

---

[5]Nichols made these same arguments in his motion for new trial, which was denied by operation of law.

Under *Brady*, nondisclosure of favorable evidence violates due process only if it is "material" to guilt or punishment. *Pena*, 353 S.W.3d at 812. "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs*, 427 U.S. 97, 109–10, 96 S. Ct. 2392, 2400 (1976). The defendant must show that, "in light of all the evidence, it is reasonably probable that the outcome of the trial would have been different had the prosecutor made a timely disclosure." *Pena*, 353 S.W.3d at 812.

Here, Nichols argues on appeal that a jury could logically infer from evidence that Adame was a confidential informant that she was around illegal substances and that, but shooting her, Nichols was protecting himself and his son from her drug use and relations with drug dealers. But Adame had not been a confidential informant for three years prior to the shooting, and Nichols presented no evidence and makes no argument that he knew, prior to the shooting, that Adame had been an informant. Further, Nichols was able to present evidence of Adame's drug use and relationship with drug dealers. Nichols cross-examined Adame about her drug use at both stages of trial, including that she and their child had tested positive for methamphetamines in the past. Nichols also cross-examined Grant about his use of methamphetamines with Adame.

8

Balancing the strength of evidence of Adame's history as a confidential informant three years prior to the shooting against the evidence supporting Nichols's conviction for aggravated assault and his twenty-seven-year sentence, we cannot say that there is a reasonable probability that presenting details of Adame's history as a confidential informant to the jury would have resulted in a different outcome at either the guilt/innocence or punishment stage of trial. *See Higginbotham v. State*, 416 S.W.3d 921, 926 (Tex. App.—Houston 2013, no pet.). We hold that the trial court did not abuse its discretion by denying Nichols's request that the trial court order the State to produce the requested information about Adame's history as a confidential informant, and we overrule this portion of Nichols's second issue.

## B. Cross-Examination

The Sixth Amendment protects the defendant's right not only to confront the witnesses against him, but to cross-examine them as well. *See Davis v. Alaska*, 415 U.S. 308, 316, 94 S. Ct. 1105, 1110 (1974). The accused is entitled to great latitude to show a witness's bias or motive to falsify her testimony. *See Hodge v. State*, 631 S.W.2d 754, 758 (Tex. Crim. App. [Panel Op.] 1982); *cf. Gonzales v. State*, 929 S.W.2d 546, 549 (Tex. App.—Austin 1996, pet. ref'd) ("The rules of evidence grant a party greater latitude to prove a witness's bias than to prove a witness's untruthful character.").

However, the right of cross-examination is not unlimited. A trial court has the discretion to limit testimony that may confuse the issues or be only marginally

9

relevant. *See Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S. Ct. 1431, 1435 (1986). The trial court must carefully consider the probative value of the evidence and weigh it against the risks of admission. *See Hodge*, 631 S.W.2d at 758. These potential risks include "the possibility of undue prejudice, embarrassment or harassment to either a witness or a party, the possibility of misleading or confusing a jury, and the possibility of undue delay or waste of time." *Id.*; *see Lopez v. State*, 18 S.W.3d 220, 222 (Tex. Crim. App. 2000); *Chambers v. State*, 866 S.W.2d 9, 27 (Tex. Crim. App. 1993), *cert. denied*, 511 U.S. 1100 (1994). Moreover, "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S. Ct. 292, 294 (1985); *see Walker v. State*, 300 S.W.3d 836, 844–45 (Tex. App.—Fort Worth 2009, pet. ref'd).

Here, the trial court acted within its discretion by concluding that evidence of Adame's history as a confidential informant was not relevant to the case; she had not been a confidential informant since 2008, and in this case, she was testifying as the complainant in an aggravated assault case after having been shot. Nichols complains that the evidence was admissible to show her level of involvement with drugs and drug dealers, but as we explained above, the jury heard about Adame's history with drugs and her relationship with drug dealers. Nichols does not allege that her role as a confidential informant showed a potential bias, motive, or prejudice in this case. *See* Tex. R. Evid. 401; *Hammer*

10

*v. State*, 296 S.W.3d 555, 562–63 (Tex. App. 2009).  Because we conclude that the trial court acted within the zone of reasonable disagreement by prohibiting Nichols from cross-examining Adame about her past role as a confidential informant, we overrule the remainder of Nichols's second issue.

### V. QUOTIENT VERDICT

In his third issue, Nichols contends that the trial court abused its discretion by denying his motion for new trial because the jury improperly sentenced him by using a quotient verdict.

We review a trial court's denial of a motion for new trial under an abuse of discretion standard.  *Colyer v. State*, 428 S.W.3d 117, 122 (Tex. Crim. App. 2014).  "We do not substitute our judgment for that of the trial court; rather, we decide whether the trial court's decision was arbitrary or unreasonable."  *Id.* (quoting *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006)).

Jurors may not reach their verdict by lot or in any other manner that is not a fair expression of the jurors' opinion.  Tex. R. App. P. 21.3(c).   When a jury agrees to adopt and be bound by a quotient verdict, a defendant is entitled to a new trial.  *Ramsey v. State*, 146 S.W.2d 192, 193 (Tex. Crim. App. 1940). However, before a court can grant a new trial on this basis, admissible evidence must demonstrate that the jurors agreed to be bound by the result of the averaging process in advance of the calculation.  *Martinez v. State*, 496 S.W.2d 612, 613–14 (Tex. Crim. App. 1973).  Absent such an agreement, there is no

misconduct. *Id.* at 613; *Malbrough v. State*, 846 S.W.2d 926, 927 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd).

Here, after the jury assessed punishment, Nichols requested that the trial court inspect the jurors' notes to determine if they contained evidence of a quotient verdict. The trial court reviewed the notes and allowed the parties to view them. Nichols alleged in his motion for new trial that the jurors' notes revealed that they had agreed to a quotient verdict, and Nichols attached to his motion defense counsel's affidavit stating that the jurors' notes included a chart that "was obviously used to determine the sentence as a result of a quotient verdict." The motion also included an affidavit from defense counsel's employee stating that she had contacted a juror who stated that "some of the jurors were considering 25 years, some wanted 30 years, and some wanted 50 years" so the jurors agreed to accept the average as the verdict. At the hearing on Nichols's motion, the State objected to the affidavits under rule 606.[6]

Rule of evidence 606(b) provides,

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the jury's deliberations, or to the effect of anything on any juror's mind or emotions or mental processes, as influencing any juror's assent to or dissent from the verdict or indictment. Nor may a juror's affidavit or any statement by a juror concerning any matter about which the juror would be precluded from testifying be admitted in evidence for any of these purposes.

_____

[6]The trial court deferred ruling on the objection until it could examine the case law, and it did not make a ruling on the objection or the motion for new trial that day. The motion was denied by operation of law. *See* Tex. R. App. P. 21.8.

12

Tex. R. Evid. 606(b). The only exceptions are for outside influences and to rebut a claim that a juror was not qualified to serve. *Id.*

Rule 606(b) applies in this case to bar consideration of the affidavit of defense counsel's employee because it contains a statement by a juror concerning an incident that occurred during the jury's deliberations as influencing some jurors' assent to the verdict on punishment. *See id.* Even assuming that the remaining affidavit of defense counsel and the jurors' notes were admissible under rule 606(b), they are only evidence of calculating an average and do not show *an agreement* by the jurors to be bound by the result of an averaging process *prior to calculation* of that average. *See Martinez*, 496 S.W.2d at 613–14; *see also Malbrough*, 846 S.W.2d at 927 ("*The agreement to be bound by the outcome* is the evil of any verdict . . . .").

Nichols cites to *McIntire v. State* to argue that a juror's statement is admissible to prove juror misconduct. 698 S.W.2d 652 (Tex. Crim. App. 1985). But *McIntire* was decided before rule 606(b) became effective on March 1, 1998, upon the adoption of the consolidated rules of evidence. *See* Tex. R. Evid. 606(b). Although the former rules permitted jurors to testify to anything relevant to the verdict's validity, that is no longer the case. *Hicks v. State*, 15 S.W.3d 626, 630 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd); *Sanders v. State*, 1 S.W.3d 885, 887 (Tex. App.—Austin 1999, no pet.). Thus, because there is no admissible evidence to show an agreement by the jurors to be bound by a

13

quotient verdict, we hold that the trial court did not abuse its discretion by denying Nichols's motion for new trial on punishment.  *See Martinez*, 496 S.W.2d at 613–14; *Malbrough*, 846 S.W.2d at 927.  We overrule Nichols's third issue.[7]

## VI.  SELF-DEFENSE INSTRUCTION

In his fifth issue, Nichols asserts that the trial court erred by denying his request for a self-defense instruction in the jury charge.

A trial court must give a requested instruction on every defensive issue raised by the evidence without regard to its source or strength, even if the evidence is contradicted or is not credible.  *Krajcovic v. State*, 393 S.W.3d 282, 286 (Tex. Crim. App. 2013).  Some evidence must support the defense as a rational alternative to criminal liability.  *Id.*

In order for a trial court to submit a self-defense instruction to the jury, a defendant must produce sufficient evidence on each element to raise the issue.  Tex. Penal Code Ann. § 2.03 (West 2011).  Penal code sections 9.31 and 9.32 provide in relevant part that a person is justified in using deadly force against another "when and to the degree the actor reasonably believes the force is immediately necessary . . . to protect the actor against the other's use or attempted use of unlawful deadly force."  *Id.* §§ 9.31(a), .32(a) (West 2011).  A

---

[7]Having determined that the trial court did not commit any error with regards to Nichols's first, second, and third issues, we overrule his fourth issue, in which he asserts that the trial court abused its discretion by denying his motion for new trial based on the cumulative effect of the errors he alleged in his first three issues.

"reasonable belief" is that which "would be held by an ordinary and prudent man in the same circumstances as the actor." *Id.* § 1.07(a)(42) (West Supp. 2014).

Here, Nichols argues that the testimony of his best friend James Devin Wade was some evidence raising the issue of self-defense. Wade testified that after Nichols shot Adame, he called Wade and explained that he had gone to the house where Adame was staying with a shotgun in order "to intimidate her." Nichols told Wade that when he drove up, he saw Adame and a black man—Eric Grant—outside. Nichols believed that Grant was Adame's drug dealer. Grant ran up to his truck, and then Nichols accidentally fired the shotgun.

Neither Wade's testimony nor any other evidence in the record constitutes any evidence that Nichols possessed a reasonable belief that deadly force was necessary to protect against Grant's—or anyone else's—unlawful use of deadly force. *See id.* § 9.32(a). Because there is no evidence that could support a rational inference of all of the elements of self defense, Nichols was not entitled to a self-defense instruction. *See Shaw v. State*, 243 S.W.3d 647, 657 (Tex. Crim. App. 2007), *cert. denied*, 553 U.S. 1059 (2008). Accordingly, we overrule Nichols's fifth issue.

## VII. CONCLUSION

Having overruled Nichol's five issues, we affirm the trial court's judgment.

/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL: DAUPHINOT, GARDNER, and WALKER, JJ.

15

DAUPHINOT, J. concurs without opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  February 5, 2014