PD-0523-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 5/5/2015 12:18:39 PM
Accepted 5/6/2015 11:28:49 AM
ABEL ACOSTA
CLERK

CAUSE NO. _____

In the
Texas Court of Criminal Appeals
_____

COLEMAN W. NICHOLS
*Petitioner*

vs.

THE STATE OF TEXAS
*Respondent*

_____

From the Second District Court of Appeals,
Cause No. 02-13-00566,
And the 367th District Court for Denton County, Texas
Trial Court Cause Nos. F-2011-1562-E and F-2011-1563-E,
Honorable Vicki Isaacks, Sitting by Assignment.

_____

PETITION FOR DISCRETIONARY REVIEW
_____

FILED IN
COURT OF CRIMINAL APPEALS

May 11, 2015

ABEL ACOSTA, CLERK

HENRY C. PAINE, JR.
EDWARD J. NOLTER
Marsh & PAINE, P.C.
101 S. Woodrow
Denton, TX 76205
Tel: (940) 536-377
Fax: (940) 382-4288
HCP@MARSHPAINELAW.COM
EJN@MARSHPAINELAW.COM

**ORAL ARGUMENT IS NOT REQUESTED**

## IDENTITY OF THE PARTIES

**TRIAL COURT:**

HON. VICKI ISAACKS, Sitting by Assignment

**PETITIONER: COLEMAN W. NICHOLS**

Petitioner's Trial and Appellate  Counsel:

HENRY C. PAINE, JR.  
Marsh& Paine, P.C.  
101 S. Woodrow  
Denton, TX 76205  
Tel: (940) 382-4200  
Fax: (940) 382-4288  
HCP@MARSHPAINELAW.COM

EDWARD J. NOLTER  
SBOT#24081073  
101 S. Woodrow  
Denton, TX 76205  
Tel: (940) 382-4200  
Fax: (940) 382-4288  
EJN@MARSHPAINELAW.COM

**RESPONDENT: THE STATE OF TEXAS**

**State's Trial Counsel:**  
Assistant District Attorney  
Attorney  
MICHAEL GRAVES  
DUSTIN I. GOSSAGE  
Denton County Courts Building  
1450 E. McKinney, Suite 3100  
Denton, Texas 76209  
Tel: (940) 349-2600  
Fax: (940) 349-2601

**State's Appellate Counsel:**  
Assistant District  
CATHERINE LUFT  
Denton County CourtsBuilding  
1450 E. McKinney, Suite 3100  
Denton, Texas 76209  
Tel: (940) 349-260  
Fax: (940) 349-2601

**TABLE OF CONTENTS**      **PAGE**

IDENTITY OF THE PARTIES     2

TABLE OF CONTENTS     3

INDEX OF AUTHORITIES     4

STATEMENT REGARDING ORAL ARGUMENT     5

STATEMENT OF THE CASE     5

STATEMENT OF PROCEDURAL HISTORY     6

ISSUES PRESENTED     7

ARGUMENT     9

ISSUE NO. 1     9

ISSUE NO. 2     16

ISSUE NO. 3     18

ISSUE NO. 4     19

ISSUE NO. 5     22

ISSUE NO. 6     24

CONCLUSION AND PRAYER     25

CERTIFICATE OF COMPLIANCE     26

CERTIFICATE OF SERVICE     26

# INDEX OF AUTHORITIES

**CASE**        **PAGE**

*Brady v. Maryland*, 373 U.S. 83 (1963) — 19

*Gallo v. State*, 239 S.W.3d 757 (Tex. Crim. App. 2007) — 18

*Giglio v. United States*, 405 U.S. 150 (1972) — 19

*Gonzales v. State*, 304 S.W.3d 838 (Tex. Crim. App. 2010) — 12

*Heiselbetz v. State*, 906 S.W.2d 500 (Tex. Crim. App. 1995) — 23

*Holden v. State*, 201 S.W.3d 761 (Tex. Cr. App. 2006) — 24

*Hooper v. State,* 214 S.W.3d 9, 13 (Tex.Crim.App.2007) — 25

*In re Oliver*, 233 U.S. 257 (1948) — 19

*Janecka v. State*, 937 S.W.2d 456 (Tex. Crim. App. 1996) — 12

*Miller v. State*, 36 SW3d 503, 506 (Tex. Crim. App. 2001) — 10


**CONSTITUTIONS AND STATUTES**        **PAGE**

Texas Rules of Appellate Procedure 47.1 — *passim*

Texas Rules of Appellate Procedure 21.9(c) — 25

## STATEMENT REGARDING ORAL ARGUMENT

Petitioner waives oral argument.

## STATEMENT OF THE CASE

Petitioner was convicted by a jury for allegedly committing the offense of aggravated assault family violence against Diane Adame (the alleged complainant). Petitioner was sentenced to twenty-seven (27) years in the Texas Department of Criminal Justice/Institutional Division.

Petitioner appealed his conviction to the Second Court of Appeals in Ft. Worth. The Court of Appeals affirmed Petitioner's conviction and sentence.

The record of the case consists of one (1) volume of the Clerk's record. The Clerk's record will be referred to as ( _v_CR _p_). The Court Reporter's record consists of fifteen (15) volumes and will be referred to as (_v_RR_p_). Petitioner's Brief is referred to as (AB _). State's Brief is referred to as (SB _). Petitioner's Motion for Rehearing will be referred to as (MRH _). The Second Court of Appeals opinion will be referred to as (COA at __).

# STATEMENT OF PROCEDURAL HISTORY

1. On February 5, 2015 the Second Court of Appeals issued its memorandum opinion and judgment affirming Petitioner's conviction.

2. On February 26, 2015 Petitioner timely filed his motion for rehearing.

3. On April 2, 2015 the Second Court of Appeals denied Petitioner's motion for rehearing.

4. On Saturday, May 2, 2015 his Petition for Discretionary Review was due.

# ISSUES PRESENTED

## ISSUE PRESENTED NO. 1

**DID THE COURT OF APPEALS FAIL TO FOLLOW RULE 47.1 OF THE TEXAS RULES OF APPELLATE PROCEDURE BY FAILING TO ADDRESS THAT THE TRIAL COURT'S DENIAL OF PETITIONER'S MOTION FOR CONTINUANCE PREVENTED HIM FROM PRESENTING A COMPLETE DEFENSE?**

## ISSUE PRESENTED NO. 2

**IS PETITIONER'S REQUEST FOR A TWO (2) WEEK CONTINUANCE TO INVESTIGATE 236 PAGES OF CPS DOCUMENTS PRODUCED TO PETITIONER THE THURSDAY BEFORE TRIAL BEGINS UNREASONABLE?**

## ISSUE PRESENTED NO. 3

**DID THE TRIAL COURT ABUSE ITS DISCRETION WHEN IT FAILED TO GRANT PETITIONER A CONTINUANCE?**

## ISSUE PRESENTED NO. 4

**DID THE COURT OF APPEALS FAIL TO FOLLOW RULE 47.1 OF THE TEXAS RULES OF APPELLATE PROCEDURE BY FAILING TO ADDRESS THE JURY'S NOTE DURING PUNISHMENT THAT UNEQUIVOCALLY SHOWS PETITIONER WAS HARMED BY THE TRIAL COURT'S REFUSAL TO ALLOW ANY DISCOVERY OR TESTIMONY OF THE ALLEGED COMPLAINANT'S HISTORY AS A CONFIDENTIAL INFORMANT DURING PETITIONER'S TRIAL?**

## ISSUE PRESENTED NO. 5

**DID THE COURT OF APPEALS FAIL TO FOLLOW RULE 47.1 OF THE TEXAS RULES OF APPELLATE PROCEDURE BY FAILING TO ADDRESS PETITIONER'S ISSUE ON APPEAL THAT THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED HIS MOTION FOR NEW TRIAL?**

## ISSUE PRESENTED NO. 6

**DID THE TRIAL COURT ABUSE ITS DISCRETION WHEN IT FAILED TO GRANT PETITIONER'S MOTION FOR NEW TRIAL FOR PUNISHMENT?**

CAUSE NO. _____

In the
Texas Court of Criminal Appeals
_____

COLEMAN W. NICHOLS
*Petitioner*

vs.

THE STATE OF TEXAS
*Respondent*
_____

From the Second District Court of Appeals,
Cause No. 02-13-00566,
And the 367th District Court for Denton County, Texas
Trial Court Cause Nos. F-2011-1562-E and F-2011-1563-E,
Honorable Vicki Isaacks, Sitting by Assignment.
_____

PETITION FOR DISCRETIONARY REVIEW
_____

**ARGUMENT**

**ISSUE PRESENTED NO. 1**

**DID THE COURT OF APPEALS FAIL TO FOLLOW RULE 47.1 OF THE TEXAS RULES OF APPELLATE PROCEDURE BY FAILING TO ADDRESS THAT THE TRIAL COURT'S DENIAL OF PETITIONER'S MOTION FOR CONTINUANCE PREVENTED HIM FROM PRESENTING A COMPLETE DEFENSE?**

The Second Court of Appeals overruled Petitioner's issue holding that the trial court did not err when it denied Petitioner's motion for continuance prior to trial. However, in its order denying petitioner's motion for rehearing, Justice Dauphinot stated she "would grant rehearing on the court's own motion on the continuance issue." (Order p. 2).

Rule 47.1 of the Texas Rules of Appellate Procedure requires that a court of appeals issue an opinion that is brief but "addresses every issue raised and necessary to final disposition of the appeal."

Due process and the due course of law require that Petitioner be afforded the ability to present a meaningful and complete defense. *In re Oliver*, 233 U.S. 257 (1948); *Miller v. State*, 36 SW3d 503, 506 (Tex. Crim. App. 2001)("The U.S. Constitution ensures that criminal defendants will have 'a meaningful opportunity to present a complete defense.'" (internal citations to Supreme Court cases omitted).

Nowhere within the Court of Appeals opinion does it address whether Petitioner was denied the right to present a complete defense when the trial court denied his motion for continuance to investigate the 236 pages of CPS documents provided to Petitioner the Thursday before trial started. Instead, the Court of Appeals framed Petitioner's issue as "Generally, a trial court does not abuse its discretion when it denies a continuance sought to secure impeachment testimony."(COA at 4). Some of

the information was impeachment material; however, the potential witnesses and information Petitioner needed to investigate and subpoena were to present a complete defense so the jury would have evidence of the entire situation and circumstances leading up to the alleged offense that would have provided mitigating evidence for the jury to consider at punishment on Petitioner's behalf. Alleged offenses such as this do not happen within a vacuum.

Petitioner's trial was scheduled to begin Monday, August 26, 2013.

On Wednesday, August 21, 2013, the trial court ordered the State to produce to Petitioner a CD containing Texas Department of Family Services (CPS) records. (1 CR 43).

On Thursday, August 22, 2013, a pretrial discovery hearing was held on Petitioner's motion for discovery which was filed on May 23, 2013. (4 RR 4).

On the day of the discovery hearing a copy of the CPS records were provided to Petitioner. (15 RR 70-306).

A review of the 236 pages of CPS documents determined that the records contained *Brady* material which needed to be investigated, witnesses interviewed and records subpoenaed in order for Petitioner to present a complete defense.

A hearing was held regarding an unrelated matter on Friday, August 23, 2013 at which time Petitioner orally requested a motion for continuance based upon the 236

pages of CPS documents which the court denied. (4 RR 21).

On Monday, August 26, 2013, Petitioner presented a written and sworn motion for continuance based upon the CPS records and requested additional time of approximately two (2) weeks which was denied. (1 CR 97); (5 RR 15-16).

The CPS records were admitted into evidence for purposes of the record during trial and at the motion for new trial. (6 RR 92-93)(15 RR 70-306).

The information in the records involved CPS investigators and therapists located in Ft. Worth and Denton. (15 RR 86); (Exhibit 3, 1 CR 129-130). Counsel for Petitioner was in hearings related to this case on the Friday before trial. Petitioner's counsel could not have reviewed the documents, determined who should be subpoenaed, or request subpoenas for those individuals prior to trial. It is because of these reasons Petitioner requested the written motion for continuance the day of trial.

An abuse of discretion in this context is established by a showing that (1) the trial court erred by denying his motion and (2) he was harmed by the denial of a continuance. *Gonzales v. State*, 304 S.W.3d 838, 843 (Tex. Crim. App. 2010); *Janecka v. State*, 937 S.W.2d 456, 468 (Tex. Crim. App. 1996). The first prong requires the Petitioner to show that "the case made for delay was so convincing that no reasonable trial judge could conclude that scheduling and other considerations as well as fairness to the State outweighed the Petitioner's interest in delay of the trial."

*Gonzalez*, 304 S.W.3d at 843 (quoting George E. Dix & Robert O. Dawson, 42 Tex. Prac. Series: Criminal Practice and Procedure § 28.56 (2d ed. 2001)). To satisfy the second prong, a Petitioner need show that the trial court's ruling actually prejudiced his defense. *Janecka v. State*, 937 S.W.2d 456, 468 (Tex. Crim. App. 1996); *Heiselbetz v. State*, 906 S.W.2d 500, 511-12 (Tex. Crim. App. 1995).

The continuance was required to subpoena the counseling records maintained by Janie Zygiel, Healthy Relationship, Focus on Fathers and the actual results of the drug tests by Adame and Petitioner. (Exhibit 3, 1 CR 129-130).

Prior to the alleged offense, Petitioner had sole-custody of their son and the alleged complainant was not allowed unsupervised visits with their son according to CPS. (15 RR 243).

Petitioner required more time to track down and interview CPS officer Leann Winker. Winker's notes reflected that Petitioner and Adame were attempting reconciliation around February 15, 2011, because they were going to church together; and, since they were attempting to reconcile, Adame inquired to Winker "about how long before [Adame] does not have to be monitored w/[their son]" (15 RR 243). Winker responded that Adame "needed to begin services * * *." (id).

Winker's meeting on March 8, 2011, was crucial to Petitioner's defense and to providing evidence in mitigation. (15 RR 246). At trial Adame was asked by Petitioner:

"Q: Do you recall telling – or asking CPS on March the 8th of 2011 what would happen if Cole was caught using?

A: No, I don't remember.

Q: Did that happen or did that not happen?

A: I don't recall.

Q: So you don't recall that at all?

A: No." (6 RR 95).

Winker's notes from the March 8th meeting states:

"[Adame] discussed her concerns about [Petitioner] stating that he is becoming more mean and she fears he may again be using drugs. She stated he no longer wants to go to church w/her and she doesn't think they can make it without a strong support system. [Adame] inquired about being able to have [child] at times. [Winker] advised that we'd have to work on that but that [Adame] had to begin services and make progress. [Adame] stated she understood. [Adame] asked what would happen if Cole was caught using. [Winker] advised that since [Petitioner] didn't want to get his family involved, that [Winker] would look at her family for placement. I discussed this with MGM [maternal grandmother]. She stated she is willing to have [child] move in w/them. * * *" (emphasis added). (15 RR 246).

Eventually, Adame's memory was refreshed with the document. (6 RR 113-114).

However, despite saying "Yeah, I remember" to the document, she could not recall asking what would happen if he got caught using. (6 RR 114). Petitioner attempted to introduce the document into evidence but trial court sustained the State's objection to hearsay and improper impeachment. (6 RR 114). So, despite having her memory

14 – *Coleman Nichols Petition for Discretionary Review.*

refreshed with the document, Adame continued to deny that the conversation took place. This is why investigation into Winker and the CPS documents were crucial to Petitioner's case and why the trial court's failure to grant Petitioner's motion for continuance prejudiced his defense and prevented him from receiving a fair trial.

After the March 8, 2011, exchange with Winker, Petitioner allegedly assaulted Adame while he was driving on March 11, 2011. (15 RR 247). This resulted in Petitioner being arrested, his child taken from him, his child placed with Adame (15 RR 247) and protective orders filed against him. (State's Exhibit 1, 11 RR 7; State's Exhibit 2, 11 RR 10).

It was now Petitioner who could not visit his son without supervision.

On or about April 15, 2011, Petitioner was in a bar and saw a couple of Adame's friends who told Petitioner that they just saw her at the "dope house" and they did not know where Petitioner's son was. (6 RR 177-179). In fact, at trial Adame testified that the night she was shot she had gone to the "dope house," purchased methamphetamine, took the methamphetamine back to her home where Petitioner's son was, and smoked the methamphetamine in front of her home with an individual by the name of Eric Grant. Grant had recently been released from the Texas Department of Criminal Justice for engaging in organized criminal activity. (6 RR 56-61) (7 RR 22).

Petitioner was prejudiced because presenting a complete defense in mitigation

*15 – Coleman Nichols Petition for Discretionary Review.*

during punishment involved getting these documents and testimony before the Court to show that Adame (1) was not following CPS' recommended plans to gain unsupervised visits with their son; and (2) that her story of reconciliation or story that Petitioner was doing drugs and becoming more aggressive did not work to restore her unsupervised visits with their son; that three (3) days later Petitioner was accused of assaulting Adame causing him to be arrested and having his son taken from him.

The Court of Appeals failed to address whether the denial of the motion for continuance prevented him from presenting a complete defense.

## ISSUE PRESENTED NO. 2

**IS PETITIONER'S REQUEST FOR A TWO (2) WEEK CONTINUANCE TO INVESTIGATE 236 PAGES OF CPS DOCUMENTS PRODUCED TO PETITIONER THE THURSDAY BEFORE TRIAL BEGINS UNREASONABLE?**

Petitioner respectfully requests that the above argument and facts in Issue No. 1 be incorporated into Issue No. 2.

As argued above, the CPS records at issue were delivered to Petitioner the Thursday before trial started. (15 RR 70-306). Petitioner's counsel had hearings on Petitioner's case the next day.  At the hearing Petitioner requested an oral continuance to investigate the documents which was denied. (4 RR 21).

In light of the 236 pages of documents produced, Petitioner filed a written and

sworn to motion for continuance requesting a two (2) week continuance to investigate the documents, issue subpoenas, and interview witnesses, which was denied. (5 RR 15-16).

The Court of Appeals held that the "trial court did not abuse its discretion by concluding that scheduling and other considerations, as well as fairness to the State, outweighed Nichols's interest in delaying the trial to investigate certain information in the CPS records. *Gonzales*, 304 S.W.3d at 843." (COA at 6).

There is nothing in the record to suggest that scheduling for the Court would prevent Petitioner from having his trial postponed for two (2) weeks. Judge Isaacks was sitting by assignment in the cause. Judge Issacks is retired and has no current docket. In regards to the fairness to the State element, it was the State who produced the documents the Thursday prior to trial. The only person prejudiced by the State's failure to produce the documents prior to trial was Petitioner. In light of the facts before the trial court and the Court of Appeals, a two (2) week continuance of trial to investigate the records was not unreasonable, would not have caused any scheduling conflicts with the court, nor would it have affected the fairness to the State. All of the State's witnesses had been subpoenaed or were in court, and those subpoenas could have easily been re-issued and served.

The record before the Court of Appeals showed that the trial court abused its

discretion when it denied Petitioner's motion for continuance and the Court of Appeals erred when there is nothing in the record to substantiate its holding based on this Court's decision in *Gonzales*.

**ISSUE PRESENTED NO. 3**

**DID THE TRIAL COURT ABUSE ITS DISCRETION WHEN IT FAILED TO GRANT PETITIONER A CONTINUANCE?**

Petitioner respectfully requests that the above argument and facts incorporated into Issue No. 3.

The standard of review of a trial court's ruling on a motion for continuance is for an abuse of discretion. *Gallo v. State*, 239 SW3d 757, 764 (Tex.Crim.App.2007).

Regardless of whether the Court Appeals addresses whether Petitioner was denied the ability to present a complete defense, Petitioner requests the opportunity to fully brief the issue as to why the trial court abused its discretion when it denied his motion for continuance when the State produced 236 pages of documents the Thursday before trial.

As noted in Issues No. 1 and No. 2, the facts are conclusive that Petitioner was denied the due course of law, due process, and the opportunity to present a complete defense because the trial court prevented him from properly investigating the information and potential witnesses that were not provided to him until just before trial.

The trial court abused its discretion when it denied Petitioner's motion for continuance and he should be granted a new trial or, at a minimum, a new trial on punishment.

## ISSUE PRESENTED NO. 4

**DID THE COURT OF APPEALS FAIL TO FOLLOW RULE 47.1 OF THE TEXAS RULES OF APPELLATE PROCEDURE BY FAILING TO ADDRESS THE JURY'S NOTE DURING PUNISHMENT THAT UNEQUIVOCALLY SHOWS PETITIONER WAS HARMED BY THE TRIAL COURT'S REFUSAL TO ALLOW ANY DISCOVERY OR TESTIMONY OF THE ALLEGED COMPLAINANT'S HISTORY AS A CONFIDENTIAL INFORMANT DURING PETITIONER'S TRIAL?**

Petitioner respectfully requests that the above arguments and facts in the above issues be incorporated into Issue No. 4.

Rule 47.1 of the Texas Rules of Appellate Procedure requires that a court of appeals issue an opinion that is brief but "addresses every issue raised and necessary to final disposition of the appeal."

In particular, the Court of Appeals failed to address how the trial court's failure to allow discovery or testimony of the alleged complainant's time as a confidential informant[1] prejudiced Petitioner during punishment in light of the jury's note which

---

[1] Pursuant to *Brady v. Maryland*, 373 U.S. 83, 86-87, 83 S.Ct. 1194, 1196-97, 10 L.Ed.2d 215 (1963), and *Giglio v. United States*, 405 U.S. 150, 153-54, 92 S.Ct. 763, 765-66, 31 L.Ed.2d 104 (1972) the State must disclose to the defense any evidence that would tend to show a prosecution witness's bias, could be used to impeach him, or is

*19 – Coleman Nichols Petition for Discretionary Review.*

read, "***Was Diana Adame an informer when she met Cole Nichols?***" (1 CR 81)(emphasis added).

The Court of Appeals failed to address this issue in its original opinion. Petitioner timely filed his motion for rehearing requesting that the Court of Appeals explain why this failure to allow discovery or testimony of her prior experience as a confidential informant did not affect Petitioner's sentencing in light of the jury's note. In his motion for rehearing Petitioner reminded the Court of Appeals that he extensively addressed this issue in his brief (AB 38-40), how Petitioner's entire harm analysis on this issue regarded the jury's note at sentencing, and how Petitioner believed this harmed him beyond a reasonable doubt at sentencing. (MRH p. 2).

Nowhere within the Court of Appeals opinion or in its order denying Petitioner's motion for rehearing does the Court of Appeals address the important fact that the jury requested facts pertaining to Adame's role as a confidential informant and whether the trial court's denial of this information prejudiced him in light of the jury's note during sentencing. The Court of Appeals simply dismissed the jury's note in its opinion and ignored the jury's note again in its order denying Petitioner's motion for rehearing.

When taken in the correct context, Adame's time as a confidential informant was vital to Petitioner's ability to present a complete defense at guilt or punishment.

otherwise exculpatory of the defendant.

*20 – Coleman Nichols Petition for Discretionary Review.*

Adame's work as a confidential informant allegedly ended sometime in 2008, or three (3) years prior to the date of the alleged offense in 2011. However, the testimony showed that Petitioner met the alleged complainant in April of 2009 after he had been released from prison. (6 RR 49, 104-105)[2]. This information was not available to the jury.

Assuming in *arguendo* that Adame's role as confidential informant was irrelevant to guilt; it was certainly relevant to presenting a complete defense during trial for mitigation at punishment because her history as a confidential informant and her statements to Winker would have completed the picture required to present a complete defense as required by our constitutions.

The State also independently addressed the issue of the jury's note in its brief. (SB 43-44). In fact, the State agreed with Petitioner that if he was harmed by the trial court's failure to allow any testimony regarding the alleged complainant's status as a confidential informant that it should not affect the jury's finding of guilt, but "[i]f a reversal was necessary for any possible error, only Petitioner's punishment should be reversed." (SB at 44)(MHR pg. 2). The Court of Appeals wholly failed to address this issue.

Petitioner was harmed in three (3) ways by the trial court's refusal to allow

2 MHR at pg. 2.

discovery or questions on the issue. First, he was prejudiced because he was unable to present a complete defense. Secondly, he was prejudiced because the lack of information prevented him from creating a bill of exception for purposes of the record. Thirdly, had the jury had this information he would have received less than the twenty-seven years to which he was sentenced.

The Court of Appeals erred when it failed to address this important issue. This Honorable Court should allow full briefing on this issue and either remand this case back to the Court of Appeals to address or this Court should grant Petitioner a new trial.

## ISSUE PRESENTED NO. 5

**DID THE COURT OF APPEALS FAIL TO FOLLOW RULE 47.1 OF THE TEXAS RULES OF APPELLATE PROCEDURE BY FAILING TO ADDRESS PETITIONER'S ISSUE ON APPEAL THAT THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED HIS MOTION FOR NEW TRIAL?**

Petitioner respectfully requests that the above argument and facts in the above issues be incorporated into Issue No. 5.

Petitioner's issues on appeal were: (1) he was denied the right to present a complete defense when the trial court failed to grant a continuance, (2) the trial court abused its discretion when it prevented Petitioner from questioning Adame or police as to her role as a confidential informant, (3) the trial court abused its discretion when it

denied his motion for new trial because his sentence was the result of a quotient verdict, and (4) based on the totality of the circumstances it was a clear abuse of discretion for the trial court to deny his motion for new trial.[3]

Petitioner does not believe the Court of Appeals adequately addressed his Issue No. 4. In footnote n.7 on page 14 of its opinion the Court of Appeals dismisses this issue by stating:

> "Having determined that the trial court did not commit any error with regards to Nichols's first, second, and third issues, we overrule his fourth issue, in which he asserts that the trial court abused its discretion by denying his motion for new trial based on the cumulative effect of the errors he alleged in this first three issues."

Petitioner asserts that the Court of Appeals erred in this regard because even though the Court of Appeals could have found that it was not an abuse of discretion to deny the motion for continuance or questioning Adame about her role as a confidential informant at trial; it was still an abuse of discretion to not grant Petitioner a new trial on either guilt or as to punishment when after all of the evidence was presented the jury's note showed that he was prejudiced by the numerous errors committed by the trial court.

---

3 Petitioner's fifth issue pertained to the trial court's refusal to grant a self-defense charge.

## ISSUE PRESENTED NO. 6

**DID THE TRIAL COURT ABUSE ITS DISCRETION WHEN IT FAILED TO GRANT PETITIONER'S MOTION FOR NEW TRIAL FOR PUNISHMENT?**

Petitioner respectfully requests that the above argument and facts in the above issues be incorporated into Issue No. 6.

The standard of review regarding the trial court's denial of a motion for new trial is for an abuse-of-discretion. *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Cr. App. 2006).

The trial court had all of the evidence before it when it heard Petitioner's motion for new trial. It read the CPS records, understood the complete defense Petitioner should have been allowed to present at trial and in mitigation at punishment in regards to (1) Adame's past as a confidential informant, (2) Adame's concocted plan to have Petitioner arrested so she would not have to perform the services required by CPS for her to have unsupervised visits with her son, and (3) the jury's note questioning Adame's past role as confidential informant and if Petitioner knew her during that time. At a minimum, it was an abuse of discretion not to grant Petitioner a new trial as to punishment.

Without conceding Petitioner's argument that this denied Petitioner a fair trial during the guilt phase of trial, it was still relevant to punishment. The trial court abused

*24 – Coleman Nichols Petition for Discretionary Review.*

its discretion when it denied a new trial as to punishment. TRAP 21.9(a) allows a court to grant "a new trial on punishment when it has found a ground that affected only the assessment of punishment." TRAP 21.9(c) states that "[g]ranting a new trial on punishment restores the case to its position after the defendant was found guilty." It is true the jury is the ultimate factfinder. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App.2007). However, the jury can only fulfil its duty when it has all of the facts before it.

**CONCLUSION AND PRAYER**

This Court should grant full briefing so Petitioner can fully present to this Court the facts and arguments to show why the Court of Appeals erred and also why the trial court abused its discretion. Petitioner should be granted full briefing so this Court can grant him a new trial.

Respectfully Submitted,

/s/Henry C. Paine, Jr.
HENRY C. PAINE, JR.
SBOT# 15412600
EDWARD J. NOLTER
SBOT#24081073
Marsh & Paine, P.C.
101 S. Woodrow
Denton, TX
Tel: (940) 382-4200  Fax: (940) 382-4288
HCP@MARSHPAINELAW.COM
EJN@MARSHPAINELAW.COM

## CERTIFICATE OF COMPLIANCE

Petitioner certifies that the this reply brief in the instant cause contained a word count of 3,650, said count being generated by the computer program Microsoft Word that was used to prepare the document.

Signed this, the 5th day of May, 2015.

/s/Henry C. Paine, Jr.
HENRY C. PAINE JR.

## CERTIFICATE OF SERVICE

A copy of the foregoing Petitioner's Brief has been forwarded to the District Attorney of Denton County, Texas on this the 5th day of May, 2015.

/s/Henry C. Paine, Jr.
HENRY C. PAINE JR.



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

## NO. 02-13-00566-CR

COLEMAN NICHOLS                                                    APPELLANT

V.

THE STATE OF TEXAS                                                      STATE

----------

FROM THE 367TH DISTRICT COURT OF DENTON COUNTY
TRIAL COURT NO. F–2011–1562–E

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

A jury found Appellant Coleman Nichols guilty of aggravated assault and assessed his punishment at twenty-seven years' confinement. *See* Tex. Penal Code Ann. § 22.02 (West 2011). The trial court sentenced him accordingly. In five issues, Nichols complains of the trial court's denial of his motion for continuance and motion for new trial, of the exclusion of certain exculpatory

---

[1]*See* Tex. R. App. P. 47.4.

evidence, of the jury's verdict, and of the trial court's denial of his requested jury instruction on self defense. We will affirm.

## II. BACKGROUND

After dating for a year and a half, Nichols and Diana Adame ended their relationship. They had a son, A.N., who lived with Adame during the events giving rise to this case. By all accounts, neither parent viewed the other as a particularly good influence on the child. Adame abused drugs and took A.N. along when she bought drugs. Nichols spent time in prison for domestic abuse. Both parents complained to CPS about the other, alleging that the other had physically abused their son. In March 2011, Adame reported to CPS that Nichols hit her, and Nichols was arrested. CPS gave Adame custody of A.N.

On April 15, 2011, Nichols was at a bar when he heard that Adame had been at a "dope house." Angered and concerned for his son, Nichols borrowed a shotgun and drove to where Adame was staying in order to threaten her. Adame was outside the house with Eric Grant when Nichols drove up, and she recognized Nichols's truck. Nichols shot Adame with the shotgun.

Adame suffered "life-threatening" injuries from the shotgun blast, which left her with pellets in her upper abdomen, chest, face, and arms, but an emergency surgery saved her life.

## III. DENIAL OF MOTION FOR CONTINUANCE

In his first issue, Nichols argues that the trial court improperly denied his motion for continuance. He contends that the purpose of his requested

2

continuance was to identify, contact, and interview certain individuals named in CPS reports that the State turned over to him five days prior to trial.[2] He asserts that the CPS reports contained exculpatory material that required additional investigation and interviews of the CPS employees named in the reports and contends that those individuals would have provided impeachment and punishment-mitigation testimony necessary for him to present a complete defense.

We review the trial court's ruling on a motion for continuance for an abuse of discretion. *Gallo v. State*, 239 S.W.3d 757, 764 (Tex. Crim. App. 2007), *cert. denied*, 553 U.S. 1080 (2008); *Vasquez v. State*, 67 S.W.3d 229, 240 (Tex. Crim. App. 2002). To establish an abuse of discretion, the appellant must show that the trial court erred by denying the motion and that the error resulted in actual harm. *Gonzales v. State*, 304 S.W.3d 838, 843 (Tex. Crim. App. 2010).

The first prong of *Gonzales* requires the appellant to demonstrate that "the case made for delay was so convincing that no reasonable trial judge could conclude that scheduling and other considerations as well as fairness to the State outweighed the defendant's interest in delay of the trial." *Id.* The second prong requires that the error result in actual prejudice. *Janecka v. State*, 937 S.W.2d 456, 468 (Tex. Crim. App. 1996), *cert. denied*, 522 U.S. 825 (1997); *Heiselbetz v. State*, 906 S.W.2d 500, 511–12 (Tex. Crim. App. 1995). The

_____

[2]The records turned over by the State contained 236 pages of CPS investigation reports from 2002 through June 2013.

3

appellant must prove the prejudice with considerable specificity; mere speculation and bare assertions are insufficient to justify reversing the trial court's decision. *Gonzales*, 304 S.W.3d at 842–43.

Nichols makes several arguments on appeal, as he did in the trial court, regarding why he needed more time to investigate the information contained in the CPS reports. The majority of his arguments center on information from the CPS reports that could lead to evidence attacking Adame's credibility and impeaching her testimony.[3] Generally, a trial court does not abuse its discretion when it denies a continuance sought to secure impeachment testimony. *See Keel v. State*, 434 S.W.2d 687, 689 (Tex. Crim. App. 1968); *Franks v. State*, 90 S.W.3d 771, 808 (Tex. App.—Fort Worth 2002, no pet.). And here, Nichols did present evidence casting doubt on Adame's credibility. For example, Adame testified to her drug use and evidence showed that she had used drugs around A.N.; Adame admitted to lying to police about a separate family-violence incident with Nichols; and Adame's step-father testified that Adame had made false accusations against Nichols in the past. Thus, even if the trial court somehow erred by denying the motion for continuance regarding the information that

---

[3]For example, one CPS report included a CPS investigator's notation that she did not think Adame was telling the truth about where she was staying during the investigation, and Nichols argues that he should have been allowed time to interview this CPS investigator for possible impeachment testimony. In another CPS report, a CPS employee stated that Adame had asked her what would happen if Nichols was caught using drugs, which Nichols argues could have been used to impeach Adame's testimony denying that she had ever asked that question.

4

Nichols argues could have led to impeachment evidence, we cannot say that Nichols suffered any actual prejudice. *See Janecka*, 937 S.W.2d at 468; *Heiselbetz*, 906 S.W.2d at 511–12.

Nichols also argues that the CPS reports revealed the names of CPS employees who could have provided punishment-mitigation evidence that Nichols was doing well on parole and that he had cared for his son and was able to meet his son's needs. But Nichols knew of his dealings with CPS, of his conduct during parole, and of his parole officers prior to receiving the CPS reports from the State. *Cf. Wright v. State*, 28 S.W.3d 526, 532 (Tex. Crim. App. 2000) (holding that trial court did not abuse its discretion by denying defendant's request to appoint DNA expert, filed on the morning of trial, where defendant "knew early on that this case involved blood/DNA analysis"), *cert. denied*, 531 U.S. 1128 (2001).

Nichols also argues that the CPS reports show that "neighbors" had seen a known drug dealer go to Adame's house while Nichols was at work. Nichols argues that he should have been granted a continuance to determine who these "neighbors" were and what other information they could provide Nichols for his defense. These "bare assertions" are insufficient to justify reversing the trial court's decision.[4] *See Gonzales*, 304 S.W.3d at 842–43; *Heiselbetz*, 906 S.W.2d

---

[4]Nichols filed a motion for new trial, complaining in part of the trial court's denial of his motion for a continuance, but he did not present any evidence at the new-trial hearing as to what the neighbors may have testified to. *See Gonzales*, 304 S.W.3d at 842 (explaining that defendant must ordinarily file motion for new

at 512 (rejecting assertion that counsel did not have time to adequately investigate medical records for potentially mitigating evidence without a showing of harm).

We hold that the trial court did not abuse its discretion by concluding that scheduling and other considerations, as well as fairness to the State, outweighed Nichols's interest in delaying the trial to investigate certain information presented in the CPS reports. *See Gonzales*, 304 S.W.3d at 843. We further hold that, even if the trial court did err by denying the motion for continuance, Nichols was not harmed by the denial. *See id.* at 842–43. Accordingly, we overrule Nichols's first issue.

## IV. EXCLUSION OF EVIDENCE OF ADAME'S HISTORY AS A CONFIDENTIAL INFORMANT

In his second issue, Nichols argues that the trial court erred by preventing him from obtaining any discovery regarding Adame's history as a confidential informant and by refusing to allow cross-examination on the subject.

Prior to trial, Nichols filed a motion for discovery, requesting in part any police records relating to Adame's role as a confidential informant to the Denton police department. At a hearing on the motion, the State objected that evidence of Adame's past role as a confidential informant was not relevant because she was the victim in this aggravated assault case and because she had not been a

trial based on denial of continuance in order to produce evidence as to what additional information, evidence, or witnesses the defense would have had available had the motion been granted).

6

confidential informant for three years prior to the shooting. The trial court denied Nichols's request. At trial, when Nichols attempted to cross-examine Adame and a police officer about Adame's status as a confidential informant, the trial court sustained the State's relevancy objections.

Nichols contends on appeal, as he did in the trial court, that the trial court's rulings on the discovery and exclusion of Adame's history as a confidential informant violated *Brady* and denied him a meaningful opportunity to create and present a complete defense through cross-examination during both the guilt/innocence and punishment stages of the trial.[5] *See* U.S. Const. amend. VI; XIV; *Brady v. Maryland*, 373 U.S. 83, 86–87, 83 S. Ct. 1194, 1196–97 (1963).

## A. *Brady*

The State has a constitutional duty to disclose to a defendant material, exculpatory evidence. *Brady*, 373 U.S. at 86–87, 83 S. Ct. at 1196–97; *Pena v. State*, 353 S.W.3d 797, 810 (Tex. Crim. App. 2011). When arguing a *Brady* violation, an appellant must demonstrate that (1) the State failed to disclose evidence, (2) the withheld evidence is favorable to the appellant, and (3) the evidence is material, that is, there exists a reasonable probability that had the evidence been disclosed, the outcome of the trial would have been different. *Pena*, 353 S.W.3d at 812; *Hampton v. State*, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002).

---

[5]Nichols made these same arguments in his motion for new trial, which was denied by operation of law.

7

Under *Brady*, nondisclosure of favorable evidence violates due process only if it is "material" to guilt or punishment. *Pena*, 353 S.W.3d at 812. "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs*, 427 U.S. 97, 109–10, 96 S. Ct. 2392, 2400 (1976). The defendant must show that, "in light of all the evidence, it is reasonably probable that the outcome of the trial would have been different had the prosecutor made a timely disclosure." *Pena*, 353 S.W.3d at 812.

Here, Nichols argues on appeal that a jury could logically infer from evidence that Adame was a confidential informant that she was around illegal substances and that, but shooting her, Nichols was protecting himself and his son from her drug use and relations with drug dealers. But Adame had not been a confidential informant for three years prior to the shooting, and Nichols presented no evidence and makes no argument that he knew, prior to the shooting, that Adame had been an informant. Further, Nichols was able to present evidence of Adame's drug use and relationship with drug dealers. Nichols cross-examined Adame about her drug use at both stages of trial, including that she and their child had tested positive for methamphetamines in the past. Nichols also cross-examined Grant about his use of methamphetamines with Adame.

8

Balancing the strength of evidence of Adame's history as a confidential informant three years prior to the shooting against the evidence supporting Nichols's conviction for aggravated assault and his twenty-seven-year sentence, we cannot say that there is a reasonable probability that presenting details of Adame's history as a confidential informant to the jury would have resulted in a different outcome at either the guilt/innocence or punishment stage of trial. *See Higginbotham v. State*, 416 S.W.3d 921, 926 (Tex. App.—Houston 2013, no pet.). We hold that the trial court did not abuse its discretion by denying Nichols's request that the trial court order the State to produce the requested information about Adame's history as a confidential informant, and we overrule this portion of Nichols's second issue.

## B. Cross-Examination

The Sixth Amendment protects the defendant's right not only to confront the witnesses against him, but to cross-examine them as well. *See Davis v. Alaska*, 415 U.S. 308, 316, 94 S. Ct. 1105, 1110 (1974). The accused is entitled to great latitude to show a witness's bias or motive to falsify her testimony. *See Hodge v. State*, 631 S.W.2d 754, 758 (Tex. Crim. App. [Panel Op.] 1982); *cf. Gonzales v. State*, 929 S.W.2d 546, 549 (Tex. App.—Austin 1996, pet. ref'd) ("The rules of evidence grant a party greater latitude to prove a witness's bias than to prove a witness's untruthful character.").

However, the right of cross-examination is not unlimited. A trial court has the discretion to limit testimony that may confuse the issues or be only marginally

9

relevant. *See Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S. Ct. 1431, 1435 (1986). The trial court must carefully consider the probative value of the evidence and weigh it against the risks of admission. *See Hodge*, 631 S.W.2d at 758. These potential risks include "the possibility of undue prejudice, embarrassment or harassment to either a witness or a party, the possibility of misleading or confusing a jury, and the possibility of undue delay or waste of time." *Id.*; *see Lopez v. State*, 18 S.W.3d 220, 222 (Tex. Crim. App. 2000); *Chambers v. State*, 866 S.W.2d 9, 27 (Tex. Crim. App. 1993), *cert. denied*, 511 U.S. 1100 (1994). Moreover, "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S. Ct. 292, 294 (1985); *see Walker v. State*, 300 S.W.3d 836, 844–45 (Tex. App.—Fort Worth 2009, pet. ref'd).

Here, the trial court acted within its discretion by concluding that evidence of Adame's history as a confidential informant was not relevant to the case; she had not been a confidential informant since 2008, and in this case, she was testifying as the complainant in an aggravated assault case after having been shot. Nichols complains that the evidence was admissible to show her level of involvement with drugs and drug dealers, but as we explained above, the jury heard about Adame's history with drugs and her relationship with drug dealers. Nichols does not allege that her role as a confidential informant showed a potential bias, motive, or prejudice in this case. *See* Tex. R. Evid. 401; *Hammer*

10

*v. State*, 296 S.W.3d 555, 562–63 (Tex. App. 2009).  Because we conclude that the trial court acted within the zone of reasonable disagreement by prohibiting Nichols from cross-examining Adame about her past role as a confidential informant, we overrule the remainder of Nichols's second issue.

## V. QUOTIENT VERDICT

In his third issue, Nichols contends that the trial court abused its discretion by denying his motion for new trial because the jury improperly sentenced him by using a quotient verdict.

We review a trial court's denial of a motion for new trial under an abuse of discretion standard.  *Colyer v. State*, 428 S.W.3d 117, 122 (Tex. Crim. App. 2014).  "We do not substitute our judgment for that of the trial court; rather, we decide whether the trial court's decision was arbitrary or unreasonable."  *Id.* (quoting *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006)).

Jurors may not reach their verdict by lot or in any other manner that is not a fair expression of the jurors' opinion.  Tex. R. App. P. 21.3(c).   When a jury agrees to adopt and be bound by a quotient verdict, a defendant is entitled to a new trial.  *Ramsey v. State*, 146 S.W.2d 192, 193 (Tex. Crim. App. 1940). However, before a court can grant a new trial on this basis, admissible evidence must demonstrate that the jurors agreed to be bound by the result of the averaging process in advance of the calculation.  *Martinez v. State*, 496 S.W.2d 612, 613–14 (Tex. Crim. App. 1973).  Absent such an agreement, there is no

11

misconduct. *Id.* at 613; *Malbrough v. State*, 846 S.W.2d 926, 927 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd).

Here, after the jury assessed punishment, Nichols requested that the trial court inspect the jurors' notes to determine if they contained evidence of a quotient verdict. The trial court reviewed the notes and allowed the parties to view them. Nichols alleged in his motion for new trial that the jurors' notes revealed that they had agreed to a quotient verdict, and Nichols attached to his motion defense counsel's affidavit stating that the jurors' notes included a chart that "was obviously used to determine the sentence as a result of a quotient verdict." The motion also included an affidavit from defense counsel's employee stating that she had contacted a juror who stated that "some of the jurors were considering 25 years, some wanted 30 years, and some wanted 50 years" so the jurors agreed to accept the average as the verdict. At the hearing on Nichols's motion, the State objected to the affidavits under rule 606.[6]

Rule of evidence 606(b) provides,

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the jury's deliberations, or to the effect of anything on any juror's mind or emotions or mental processes, as influencing any juror's assent to or dissent from the verdict or indictment. Nor may a juror's affidavit or any statement by a juror concerning any matter about which the juror would be precluded from testifying be admitted in evidence for any of these purposes.

---

[6]The trial court deferred ruling on the objection until it could examine the case law, and it did not make a ruling on the objection or the motion for new trial that day. The motion was denied by operation of law. *See* Tex. R. App. P. 21.8.

12

Tex. R. Evid. 606(b).  The only exceptions are for outside influences and to rebut a claim that a juror was not qualified to serve.  *Id.*

Rule 606(b) applies in this case to bar consideration of the affidavit of defense counsel's employee because it contains a statement by a juror concerning an incident that occurred during the jury's deliberations as influencing some jurors' assent to the verdict on punishment.  *See id.*  Even assuming that the remaining affidavit of defense counsel and the jurors' notes were admissible under rule 606(b), they are only evidence of calculating an average and do not show *an agreement* by the jurors to be bound by the result of an averaging process *prior to calculation* of that average.  *See Martinez*, 496 S.W.2d at 613– 14; *see also Malbrough*, 846 S.W.2d at 927 ("*The agreement to be bound by the outcome* is the evil of any verdict . . . .").

Nichols cites to *McIntire v. State* to argue that a juror's statement is admissible to prove juror misconduct.  698 S.W.2d 652 (Tex. Crim. App. 1985).  But *McIntire* was decided before rule 606(b) became effective on March 1, 1998, upon the adoption of the consolidated rules of evidence.  *See* Tex. R. Evid. 606(b).  Although the former rules permitted jurors to testify to anything relevant to the verdict's validity, that is no longer the case.  *Hicks v. State*, 15 S.W.3d 626, 630 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd); *Sanders v. State*, 1 S.W.3d 885, 887 (Tex. App.—Austin 1999, no pet.).  Thus, because there is no admissible evidence to show an agreement by the jurors to be bound by a

quotient verdict, we hold that the trial court did not abuse its discretion by denying Nichols's motion for new trial on punishment.  *See Martinez*, 496 S.W.2d at 613–14; *Malbrough*, 846 S.W.2d at 927.  We overrule Nichols's third issue.[7]

## VI.  SELF-DEFENSE INSTRUCTION

In his fifth issue, Nichols asserts that the trial court erred by denying his request for a self-defense instruction in the jury charge.

A trial court must give a requested instruction on every defensive issue raised by the evidence without regard to its source or strength, even if the evidence is contradicted or is not credible.  *Krajcovic v. State*, 393 S.W.3d 282, 286 (Tex. Crim. App. 2013).  Some evidence must support the defense as a rational alternative to criminal liability.  *Id.*

In order for a trial court to submit a self-defense instruction to the jury, a defendant must produce sufficient evidence on each element to raise the issue.  Tex. Penal Code Ann. § 2.03 (West 2011).  Penal code sections 9.31 and 9.32 provide in relevant part that a person is justified in using deadly force against another "when and to the degree the actor reasonably believes the force is immediately necessary . . . to protect the actor against the other's use or attempted use of unlawful deadly force."  *Id.* §§ 9.31(a), .32(a) (West 2011).  A

---

[7]Having determined that the trial court did not commit any error with regards to Nichols's first, second, and third issues, we overrule his fourth issue, in which he asserts that the trial court abused its discretion by denying his motion for new trial based on the cumulative effect of the errors he alleged in his first three issues.

"reasonable belief" is that which "would be held by an ordinary and prudent man in the same circumstances as the actor." *Id.* § 1.07(a)(42) (West Supp. 2014).

Here, Nichols argues that the testimony of his best friend James Devin Wade was some evidence raising the issue of self-defense. Wade testified that after Nichols shot Adame, he called Wade and explained that he had gone to the house where Adame was staying with a shotgun in order "to intimidate her." Nichols told Wade that when he drove up, he saw Adame and a black man—Eric Grant—outside. Nichols believed that Grant was Adame's drug dealer. Grant ran up to his truck, and then Nichols accidentally fired the shotgun.

Neither Wade's testimony nor any other evidence in the record constitutes any evidence that Nichols possessed a reasonable belief that deadly force was necessary to protect against Grant's—or anyone else's—unlawful use of deadly force. *See id.* § 9.32(a). Because there is no evidence that could support a rational inference of all of the elements of self defense, Nichols was not entitled to a self-defense instruction. *See Shaw v. State*, 243 S.W.3d 647, 657 (Tex. Crim. App. 2007), *cert. denied*, 553 U.S. 1059 (2008). Accordingly, we overrule Nichols's fifth issue.

## VII. CONCLUSION

Having overruled Nichol's five issues, we affirm the trial court's judgment.

/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL: DAUPHINOT, GARDNER, and WALKER, JJ.

15

DAUPHINOT, J. concurs without opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  February 5, 2014

ACCEPTED
02-13-00566-CR
SECOND COURT OF APPEALS
FORT WORTH, TEXAS
2/26/2015 12:59:36 PM
DEBRA SPISAK
CLERK

02-13-00566-CR

| | | |
|---|---|---|
| COLEMAN NICHOLS | § | IN THE COURT OF |
| | § | |
| VS. | § | CRIMINAL APPEALS |
| | § | |
| THE STATE OF TEXAS | § | SECOND DISTRICT OF TEXAS |

## APPELLANT'S MOTION FOR REHEARING

Comes now, Coleman Nichols, by and through his attorney of record, Henry C. Paine, Jr. and in accordance with the Texas Rules of Appellate procedure presents his motion for rehearing and in support would show the following:

## ISSUE

**THIS COURT DID NOT ADDRESS WHETHER APPELLANT'S SUBSTANTIAL RIGHTS WERE AFFECTED AT PUNISHMENT WHEN THE TRIAL COURT ABUSED ITS DISCRETION BY REFUSING TO ALLOW ANY DOCUMENTATION OR TESTIMONY OF THE ALLEGED COMPLAINANT'S HISTORY AS A CONFIDENTIAL INFORMANT DURING APPELLANT'S TRIAL. REHEARING IS REQUIRED PURSUANT TO RULE 47.1 OF THE TEXAS RULES OF APPELLATE PROCEDURE.**

Rule 47.1 of the Texas Rules of Appellate Procedure requires this Honorable Court issue a written opinion that "is as brief but that addresses every issue raised and necessary to final disposition on appeal." In particular, this Court failed to address the effect of the jury's first note during punishment that particularly stated,

"Was Diana Adame an informer when she met Cole Nichols?" (1 CR 81)[1], and, if the trial court's failure to allow testimony pertaining to her role as a confidential informant prejudiced Appellant during punishment.

Appellant addressed this issue extensively in his brief (AB 38-40) and how, at a minimum, the trial court's denial of access or even questioning of the alleged complainant or the detectives caused Appellant harm during punishment. In fact, Appellant's entire harm analysis centered on the jury's note and how this harmed him at punishment beyond a reasonable doubt. (AB 41). TRAP 44.2(a) states that unless this Court determines beyond a reasonable doubt this "error did not contribute to the conviction **or punishment**" then this Court "must reverse a judgment of conviction or punishment." TRAP 44.2(a)(emphasis added). This Court's opinion failed to address this issue or provide any analysis as to how Appellant was not harmed during punishment when it is clear the jury believed this information was material and relevant to punishment.

The State also independently addressed the issue of the jury's note in its brief. (SB 43-44). In fact, the State agreed with Appellant that if he was harmed by the trial court's failure to allow any testimony regarding the alleged complainant's status as a confidential informant that it should not affect the jury's finding of guilt

---

[1] All references to the record are as follows: Reporter's Record, (v_RR_p); Clerk's Record (CR_p); Appellant's Brief, (AB_p); State's Brief, (SB_p); Court's Opinion, (CO_p).

but "[i]f a reversal was necessary for any possible error, only Appellant's punishment should be reversed." (SB at 44).

Regardless of whether the State or the trial court believed the evidence to be "relevant," the jury did as it pertained to Appellant's punishment. *Brady*[2] material must be turned over when it is material either to guilt or punishment without regard to the good or bad faith of the prosecution. *Id.* 373 U.S. at 87; *Wyatt v. State*, 23 S.W.3d 18, 27 (Tex.Crim.App.2000). In the instant case, the information was suppressed by the State by order of the trial court and by the State's continuous objections during trial regarding her role as a confidential informant, which were sustained by the trial court. (3 RR 14-20); (6 RR 108, 132); (8 RR 21).

It is clear that the jury found the alleged complainant's time as a confidential informant important at sentencing. The State relied heavily on the fact the alleged complainant worked as a confidential informant ending sometime in 2008, or three (3) years prior to the date of the offense. (3 RR 12). The testimony showed that Appellant met the alleged complainant in April of 2009 after he had been released from prison[3]. (6 RR 49, 104-105). Granted, this offense did not occur until 2011, but, she met Appellant shortly after she allegedly completed her work as a

---

[2] *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
[3] Appellant's time in prison was not for family violence issues as this Court stated in its opinion. (CO 2). Appellant's convictions were for the lesser offense of burglary. (State Ex. 93, 14 RR 160; State Ex. 94, 14 RR 163).

confidential informant and this information was relevant according to the jury's note at punishment to properly determine Appellant's sentence.

Without conceding Appellant's argument that this denied Appellant a fair trial during the guilt phase of trial, it was still relevant to punishment. The trial court abused its discretion when it denied a new trial as to punishment. TRAP 21.9(a) allows a court to grant "a new trial on punishment when it has found a ground that affected only the assessment of punishment." TRAP 21.9(c) states that "[g]ranting a new trial on punishment restores the case to its position after the defendant was found guilty."

It is true the jury is the ultimate factfinder. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App.2007). However, the jury can only fulfil its duty when it has all of the facts before it. The alleged complainant's testimony regarding when she was a confidential informant would not have confused the issues either at trial or punishment. If what the State presented to the trial court as true (that the alleged complainant's time as a confidential informant ended in 2008) then the jury would have a had a more complete timeline as to the facts and would have rendered a sentence that did not violate Appellant's substantial rights.

This significant issue of whether the trial court abused its discretion when it failed to grant Appellant a new trial on punishment when the trial court prevented

the alleged complainant to testify regarding her previous role as a confidential informant or its order preventing the State from providing Brady material did affect Appellant's substantial rights during punishment and was not addressed by this Court. *Ergo,* rehearing is required so this court can address "every issue raised and necessary to final disposition of the appeal." TRAP 47.1.

## CONCLUSION AND PRAYER

Appellant respectfully requests this court rehear Appellant's case and address the issue presented in this motion so that the requirements of TRAP 47.1 are met. Appellant prays this Court grant his motion, reverse Appellant's conviction as to punishment, and grant him a new trial on punishment.

Respectfully Submitted,

/s/Henry C. Paine, Jr.
HENRY C. PAINE, JR.
Marsh & Paine, P.C.
SBOT# 15412600

EDWARD J. NOLTER
SBOT#24081073
101 S. Woodrow
Denton, TX
Tel: (940) 382-4200
Fax: (940) 382-4288
HCP@MARSHPAINELAW.COM

## CERTIFICATE OF COMPLIANCE

Appellant certifies that the this motion for rehearing in the instant cause contained a word count of 1,036, said count being generated by the computer program Microsoft Word that was used to prepare the document.

Signed this, the 26th day of June 2015.

/s/Henry C. Paine, Jr.
HENRY C. PAINE JR.


## CERTIFICATE OF SERVICE

A copy of the foregoing Appellant's motion for rehearing has been forwarded to the District Attorney of Denton County, Texas on this the 26th day of June, 2015.

/s/Henry C. Paine, Jr.
HENRY C. PAINE JR.

FILE COPY



# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-13-00566-CR

COLEMAN NICHOLS                                                      APPELLANT

V.

THE STATE OF TEXAS                                                         STATE

------------

### FROM THE 367TH DISTRICT COURT OF DENTON COUNTY
### TRIAL COURT NO. F-2011-1562-E

------------

## ORDER

------------

We have considered "Appellant's Motion For Rehearing," wherein appellant complains that we did not conduct a harm analysis on an issue that we overruled in our opinion after concluding that the trial court did not err or abuse its discretion. Because a harm analysis is unnecessary where there is no error or abuse of discretion, it is the opinion of the court that the motion for rehearing should be and is hereby denied and that the opinion and judgment of February 5, 2015 stand unchanged.

FILE COPY

2

The clerk of this court is directed to transmit a copy of this order to the attorneys of record.

SIGNED April 2, 2015.

/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL:  DAUPHINOT, GARDNER, and WALKER, JJ.

DAUPHINOT, J. would grant rehearing on the court's own motion on the continuance issue.